Keating, J.
Detective Dorrish received confidential information from an informer who had given him reliable information in the past. As a result of this information, Dorrish placed under observation a three-story apartment building in Brooklyn. Two men entered and, upon their exit from the building, were placed under arrest and charged with possession of heroin.
In the police car, the two men stated that they had come from the basement of the building. Dorrish returned to the location. He opened the unlocked door of the building and walked down to the basement. As he approached the door of the basement apartment, he heard someone inside whisper, ‘ ‘ I hear someone. ” At this point, the officer pushed against the apartment door, which, having no hinges, fell in.
The officer saw the defendants on the floor and observed eyedroppers and hypodermic needles there in open view. He placed the defendants under arrest and a search of their persons revealed glossine envelopes, later found to contain heroin.[1]
After a hearing, the defendants’ motion to suppress thip evidence was denied. The defendants pleaded guilty to violating section 3305 of the Public Health Law. The Appellate Term affirmed the judgments of the Criminal Court, Kings County, convicting the defendants.
It is quite clear that, once the officer broke into the apartment and observed the hypodermic needles and eyedroppers, he had probable cause to arrest the defendants and search their persons. The question is whether, in the first place, the officer had probable cause to break into the apartment.
In Johnson v. United States (333 U. S. 10) an officer had received information from a reliable informer that unknown *391 persons were smoking opium at a specified hotel.[2] The officer, together with four narcotic agents, went to the hotel. ‘ ‘ All were experienced in narcotic work and recognized at once a strong odor of burning opium which to them was distinctive and unmistakable. The odor led to Room 1. ” (Johnson v. United States, supra, p. 12.)
The occupant of the room admitted the officers after they stated their authority. The officers found opium and smoking apparatus in the room, which were used against the occupant of the room at her trial.
The Supreme Court pointed out that stronger evidence that a crime is being committed is necessary when an officer searches without a warrant.
“ The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from the evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. ” (Johnson v. United States, supra, pp. 13-14.)
If Detective Dorrish had obtained a warrant to search the premises, the issuance by a magistrate would be a factor of some weight in determining the question of probable cause. As the court stated in United States ex rel. Rogers v. Warden (381 F. 2d 209, 216):
‘ ‘ Once there has been a judicial determination of probable cause * * * it will not be handily overturned by an appellate court. ”
Nevertheless, although the officer in Rogers had obtained a search warrant, the court found it invalid due to the deficiency of the affidavit on which it was based. The officer had stated two grounds for his belief that the apartment which Rogers occupied contained narcotics. The first was that a reliable informant had given him this information and the second that he had observed the premises and seen four narcotics addicts *392 enter them within a two-day period. The court stated (p. 217) that the first ground was insufficient by itself because the ‘ ‘ affidavit suffered from the same fatal flaw that was present in [Aguilar v. Texas, 378 U. S. 108] —it did not contain a statement that the informant spoke from personal knowledge when he reported that Rogers was selling drugs in his apartment ”.
Detective Dorrish’s informant was even less specific. Dorrish testified that as a result of confidential information from a reliable informer he placed the apartment building under observation. Apparently, the informer did not even specify any particular apartment in the building.
Dorrish’s sole reason for singling out the basement apartment was the statement of the two men who were arrested that they had come from there. It is significant that the arrested men did not state that they procured, sold or used heroin in the basement. In this era when the use of drugs is becoming more and more common, it is quite possible for persons to have in their home drug users unknown to them. Thus, the statement that the arrested men came from the basement simply does not raise, in our view, the reasonable inference that the occupants of the basement are, therefore, drug pushers, users or possessors.[3]
The judgment of conviction should be reversed and, since the only evidence against the defendants was illegally seized, the indictment should be dismissed.
Chief Judge Fuld and Judges Van Voorhis, Bergan and Breitel concur with Judge Keating ; Judges Burke and Scileppi dissent and vote to affirm on the ground that the arresting officer had sufficient probable cause to enter the premises.
Judgment reversed and indictment dismissed.

. One of the occupants of the apartment swallowed a hypodermic needle upon the officer’s entry. She is not a party to this appeal.

. In our, case, the officer’s testimony was less specific in this respect. He merely stated that, as a result of certain information, he placed the building under observation.

. In the Rogers ease (supra) the court stated that, if the officer had sworn in his affidavit that the addicts whom he observed entering the building had come from the Rogers apartment, this, together with the informer’s tip, might well have been sufficient to show probable cause. Then, there would have been two separate grounds for believing that there were narcotics in the Rogers apartment. Detective Dorrish’s informer, however, had apparently stated nothing about the basement apartment. Thus, the search of that particular apartment was based solely on the statements of the arrested possessors.