■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD AMAROSA, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered May 8, 1974, convicting him of criminal possession of a dangerous drug (methadone) in the third degree (Penal Law, former § 220.20 [L 1969, ch 788, § 4]), upon a jury verdict, and imposing sentence. The appeal also brings up for review the denial of defendant's motion to suppress physical evidence. Judgment reversed, on the law and the facts, motion granted, and indictment dismissed. The appeal brings up for review, *inter alia*, the denial of a motion by defendant to suppress the admission of certain physical evidence used against him. He contended that no probable cause existed for its receipt in evidence. Because of reports regarding alleged illegal activities in the vicinity of a methadone clinic, four plainclothes police officers were patrolling the area in an unmarked car on April 17, 1973. For the space of about two hours, one of them had the appellant under observation. He had never seen Amarosa before, nor had any of his colleagues. On four or five occasions during the two-hour period, the officer saw defendant approach different groups of people, engage in conversation with them and then withdraw. No physical exchange of any nature occurred. He testified further, however, that at about 4:00 P.M. he saw the defendant approach a male and female. The defendant removed some paper currency from his shirt pocket and handed it to the man, whereupon the woman handed the defendant a bottle with an orange label containing a pink liquid. The plainclothes officer was 35 to 45 feet away, sitting in a parked car, when he made these latter observations. He left the car, ran to the scene and arrested all three participants. He then seized the described bottle and six more bottles (three empty) from the person of the defendant. The basis for the arrest was the officer's belief that the pink liquid was methadone. On the facts adduced, we hold that probable cause was lacking. The alleged act was susceptible of innocent interpretation. In similar factual circumstances probable cause had been found to be absent. Thus, in *People v Oden* (36 NY2d 382, 385), the court noted that: "in the instant matter, the mere passing of a glassine envelope in a neighborhood in which narcotics were known to have been present, unsupplemented by any additional relevant behavior or circumstances found to exist, was insufficient to raise the level of inference from suspicion to probable cause".

To like effect are the cases of *People v Bryant* (37 NY2d 208), where the presence on an automobile's dashboard of 43 empty glassine envelopes next to a $10 bill, folded in cuplike fashion, was held to be insufficient, *People v Davis* (36 NY2d 280), where, in a high crime area, the quick transfer of an open purse from Davis to a woman upon the approach of a uniformed police officer who thought the purse contained glassine envelopes was held insufficient and *People v Lebron* (48 AD2d 800), where observation through binoculars of money passed by defendant in exchange for a small manila envelope was held insufficient. At the trial defendant took the stand in his own defense. He testified that he was a member of the methadone clinic; that he had two bottles containing methadone (legally) in his possession when arrested; that he had no money to buy more; and that he had picked up the empty bottles from the street in order to dispose of them in a receptacle, as requested by the clinic director. He pointed out, also, that he had presented a card to the arresting officer to show his clinic membership. The card, somewhat mutilated, was recognizable as a methadone clinic card. Defendant's testimony was supported by a security guard who had lent defendant two dollars on that day, insufficient in amount to buy a bottle of methadone, and by the associate director of the clinic, who identified defendant as a member who had been legally supplied with methadone on the day of the arrest. In addition to holding that the physical evidence produced at the hearing should have been suppressed, on the testimony adduced at the trial we hold that the guilt of the defendant was not proved beyond a reasonable doubt. In view of this determination we find it unnecessary to discuss other points raised by defendant. Cohalan, Damiani and Shapiro, JJ., concur; Titone, J., dissents and votes to affirm the judgment of conviction, with the following memorandum, in which Latham, Acting P. J., concurs. In marshaling the evidence adduced at the suppression hearing, the majority has not included portions of the testimony of Police Officer Carley, one of the arresting officers. Specifically, the minutes of the suppression hearing reveal that Officer Carley testified that he had received training at the Police Academy for six months or more in all various types of narcotic packaging, which included various forms of methadone. The training also encompassed the detection of individuals engaged in narcotics violations on the street. He further stated that after observing defendant approach and converse with groups of people in the vicinity of the methadone clinic for two hours, he saw him pass a quantity of currency to a male, and receive from a female, in return, a bottle affixed with an orange label,* and containing a pink liquid. Based on these and other facts, the Criminal Term, in denying defendant's motion to suppress, found that Officer Carley had probable cause to approach the defendant, remove what he believed to be contraband from defendant's person, and then place him under arrest. I agree with that determination. Under the circumstances, Officer Carley, because of his training in the field of illicit sale of drugs, had ample reason to conclude that he had witnessed such a sale, and that, therefore, prompt police action was required to apprehend the culprits and seize any physical evidence. A police officer is entitled to draw on his whole knowledge and experience as a criminal investigation officer *(People v Valentine,* 17 NY2d 128). In determining whether probable cause to arrest exists in a particular situation, it is necessary to consider the circumstances as they appeared to

---

* The dispensing of methadone to addicts under an addiction maintenance treatment program must be made in a container affixed with an orange label (Public Health Law, § 3331, subd 4).

the police officer at the time of the arrest (Bell v United States, 254 F2d 82), and also to take into account his expertise and training in the criminal area in which he is conducting an investigation (cf. People v Meyers, 38 AD2d 484). I believe that the facts in this case are readily distinguishable from those involving glassine or manila envelopes, cited by my colleagues to justify their suppression of the evidence seized (see People v Oden, 36 NY2d 382; People v Bryant, 37 NY2d 208; People v Davis, 36 NY2d 280). In the cases cited by the majority, the officers saw only containers appropriate to hold narcotics, whereas, in the case at bar, the arresting officer saw a pink liquid in a bottle with an orange label affixed thereto. Thus, the crucial feature that distinguishes this case from those cited by the majority, is the fact that Carley, based on the training he had received in the packaging of narcotics and in the detection of narcotics crimes on the street, actually saw what he reasonably believed was a purchase of methadone on the street by the defendant (see People v Quinones, 33 NY2d 811, 812). I do not agree with the majority's contention that, under the circumstances, defendant's alleged act was susceptible of an innocent interpretation; nor do I accept defendant's argument, set forth in his brief, that the transfer of money by him for a pink liquid at 4:00 p.m., on a street in Brooklyn in the vicinity of a methadone clinic, could just as logically have been for the purchase of a liquid cleaner, children's medication, cough syrup, etc. It is perhaps trite to say, but also true, that persons wishing to buy such commodities normally shop for them in retail stores; they do not approach clusters of people on the street for two hours in order to obtain them. The standard of probable cause to be applied by a police officer making an arrest without a warrant is that which would cause a reasonable, cautious and prudent police officer under the circumstances to conclude that a crime has been or is about to be committed (People v Valentine, 17 NY2d 128, 132, supra). To my knowledge, at no time has there ever been engrafted upon such standard the additional requirement that, before making an arrest, a police officer must first explore the caverns of his mind for shadowy or unlikely reasons which might conceivably justify the apparent criminal behavior of a suspect under observation. I also disagree with the majority's determination that the guilt of the defendant was not proved beyond a reasonable doubt at the trial. In addition to Carley, two other police officers testified that they had seen the transaction involving defendant passing currency in return for a bottle of methadone. Carley further testified that, immediately after the sale, he got out of his car and ran across the street, with his *eyes at all times directed at the bottle in defendant's hand.* After grabbing the bottle from defendant's hand, Carley searched him and found six other plastic bottles, three of which contained methadone, while the other three were empty. With respect to the four bottles containing methadone seized from defendant, assuming that the jury may have believed defendant's testimony that two were given him at the clinic that day for his personal use, there still were two bottles found in his possession containing, in the aggregate, more than one ounce of methadone, which he did not account for. In my opinion, the evidence adduced at the trial clearly proved defendant's guilt beyond a reasonable doubt, and, therefore, I vote to affirm.

