■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SPENCER ELLIOTT, Appellant.—Judgment, Supreme Court, New York County, rendered November 10, 1975, convicting defendant upon his plea of guilty, of attempted criminal possession of a controlled substance in the fifth degree, which followed a denial of a motion to suppress, and sentencing him to a five-year term of probation, is reversed, on the law, the plea vacated, the motion to suppress granted, and the case is remanded for further appropriate proceedings. Defendant was arrested on November 25, 1974 following observations made over a two-hour period by members of a narcotics team. A police officer, equipped with high-powered binoculars, noticed the defendant in the neighborhood of 2175 Eighth Avenue, New York County, an area of high narcotics activity, in the company of a man named Ferbee, known to the officer as a dealer in cocaine. On one occasion, an unidentified man gave money to Ferbee, and then talked briefly with the defendant, who placed his hand near the right side of his pants. Thereafter, the defendant and the unknown person stretched their arms toward one another, the unidentified man reached towards the ground, and he then walked away. Some 40 minutes later a second unidentified man approached the defendant, at which time the defendant removed a silver object, apparently tinfoil, from his right hand pants pocket and dropped it to the ground. This unidentified man reached down as if to pick it up. The view of the officer was momentarily obstructed, but the tinfoil was not thereafter observed on the ground. The defendant was observed for another 45 minutes during which period he continued to talk with Ferbee and from time to time checked his right pants pocket. The observing officers then met with their back-up police unit, and the group went looking for the defendant to arrest him. The defendant was later seen walking along Eighth Avenue. The officers, all in uniform, approached the defendant who backed up and while being seized reached into his right pants pocket, removed a crumpled manila envelope which he threw in a forward direction. As the envelope hit the ground it opened and a number of tinfoils fell out. The admissibility of these tinfoils was the issue presented on the motion to suppress. As to the earlier observations, it is apparent that they did not establish probable cause for arresting the defendant. Indeed, the facts here are significantly weaker than those presented in *People v Maldonado* (59 AD2d 692), where the defendant was observed to exchange tinfoil for "pieces of green paper." Reversing that conviction on a finding that the facts did not establish probable cause for an arrest, the court commented: " 'even in the case of the glassine envelope it has never been held that the mere passing of such an envelope establishes probable cause.' * * * We know of no case in which it has been held that tinfoil packages are 'accepted as the telltale sign of' contraband." (Cf. *People v Abdelah,* 41 AD2d 667.) The remaining question is whether the arrest may be sustained, and the contraband found admissible, because of the defendant's action in throwing the manila envelope to the ground at the time he was placed under arrest. In *People v Alexander* (37 NY2d 202) understandably relied upon by the District Attorney here, the court sustained the validity of the arrest and the admissibility of the evidence where, in addition to other facts presented, the defendant had thrown or dropped glassine envelopes to the ground under similar circumstances. However, in

*Alexander,* the court relied upon factual findings by the trial court, affirmed by the Appellate Division, that the defendant there had dropped or thrown the envelopes "prior to the arrest" (p 204). The finding of the Judge on the suppression hearing in this case is not set forth explicitly at any point. However, he closed his remarks after the argument with the following statement: "I find he had probable cause to make the arrest and therefore the motion to suppress is denied. There is no question in my mind that if in fact he didn't have probable cause to make the arrest I would suppress it." When this comment is considered in light of the previous arguments made to the Judge, and his responses to them, it seems likely that he was resting his decision entirely upon the preliminary observations of the police officers, and that he did not find that the envelope here had been thrown prior to the defendant's arrest. In any event, the evidence strongly indicates that the defendant had been seized before the envelope had been thrown. It is true that one officer had claimed to have seen the envelope before physical contact had been made. However, the officer closest to the defendant, and the one who in fact arrested him, stated explicitly on no less than three occasions in the course of his cross-examination, that the defendant was in custody before he saw the envelope. A rather strained effort on redirect to divert him from this firm and repeatedly expressed view resulted in singularly unpersuasive testimony. For the reasons indicated, the motion to suppress should have been granted. Accordingly, the judgment of conviction is reversed, the plea of guilty is vacated, and the matter is remanded for further proceedings. Concur—Evans, Lane and Sandler, JJ.; Lupiano, J. P., and Silverman, J., dissent in a memorandum by Lupiano, J. P. as follows: The recitation of facts set forth in the majority memorandum when compared to the transcript of the suppression hearing, discloses, in my view, an incorrect impression as to the testimony elicited. Because of the characterization lent to the testimony by the majority, it is necessary to present the relevant and critical portions of the transcript verbatim. Officer Jirak, a member of the Special Narcotics Enforcement Unit of the 28th Precinct for two years, stated that in the course of narcotic surveillance, with the aid of binoculars, he "observed the defendant in the company of * * * Ferbee * * * during which time [the officer] observed Mr. Ferbee receive a sum of money from an unidentified male. After which the male walked behind Mr. Ferbee and had a conversation with the defendant * * * at which time [the officer] observed the defendant put his arm near his right side in the area of his right pants. After which he extended his arm toward this male [Officer Jirak's] view was obstructed. The unidentified male put his arm towards [defendant]. After which . . . the unidentified male reached down towards the ground. The unidentified male then, after reaching down to the ground, came up from the ground and walked away [Officer Jirak's] view was obstructed. [He] couldn't see what, if anything, [the unidentified male] picked up." Some 30 to 45 minutes later, Officer Jirak "observed another male approach defendant * * * After which [the officer] observed [defendant] once again go toward his right hand pocket. At this time [the officer] seen his hand go into his pocket. [The officer's] view not being obstructed. [Defendant] removed his hand then from his right pants pocket. He extended his arm downward, released his hand and an object fell from his hand. When it hit the ground [the officer] looked at it through the binoculars. It was silver in color * * * appeared to be a tin foil. Afterwards the male that was standing next to [defendant] reached down toward the object. At that time several individuals passed through [the officer's] line of sight. By the time they passed * * * the male had already been to the ground and

up and started walking away. When [the officer] looked [he] didn't see any tin foil on the ground. [The officer] further watched [defendant]. He had several conversations with * * * Mr. Ferbee. He kept checking his right pants pocket. [The officer] believed him to have narcotics in his right pants pocket [Mr. Ferbee] is known to me [Officer Jirak] as a cocaine dealer." The officer then gave his extensive background in street arrests involving the packaging of cocaine in tinfoils. At 4:45 P.M., some 45 minutes later, Officer Jirak ceased his observation of defendant and at 5:00 P.M. met with his back-up team and endeavored to locate defendant. The officers were all *in full uniform.* After searching "the area several times and approximately twenty to six [Officer Jirak] observed defendant walking southbound on the east side of Eighth Avenue [Defendant] looked in our direction after which he backed up a few steps reaching towards his right front pants pocket at which time he removed from his right hand a brownish paperish substance. [Defendant] then backed up as a quarterback would back up throwing a forward pass, throwing the brown paper * * * I gave pursuit to the brown paper which turned out to be a manila envelope, observed it hit the ground. When it hit the ground * * * several tin foils emerged from the manila envelope. [Officer Jirak] was about to * * * pick up the manila envelope along with the tin foils when Officer Hannagan came behind [him] and said he will pick it up. Officer Hannagan started to pick up the tin foils and the manila envelope. [Officer Jirak] turned around * * * observed Officer Mills struggling with the defendant". To the inquiry as to whether defendant was in custody at the time he threw the envelope, Officer Jirak replied: "No, he was not." On cross-examination, Officer Jirak stated that he did not see any exchange or changing of hands between defendant and the two unknown males or between defendant and Mr. Ferbee. He admitted that on subsequently approaching defendant at the time the defendant threw the envelope, his purpose was to arrest defendant. The envelope with its contents was thrown not in the officers' direction i.e., in the opposite direction i.e., away from the police. Officer Hannagan testified that "[he] had grabbed the defendant at the time [defendant] had thrown into the area a package of tin foils of coke". On cross-examination, the following questions and responses occurred: "Q. And there came a time when you saw a brown paper bag, is that correct? A. Yes. Q. And am I correct in stating that there came a time when you saw that brown paper bag being thrown and hitting the ground? A. Yes. * * * Q. And am I correct when you state you saw this brown paper bag hitting the ground you were standing right next to [defendant]? A. That's correct. Q. In other words, when you saw this brown paper bag hit the ground, you were holding [defendant]? A. Yes. Q. So, at the time [defendant] threw the bag you were physiically holding him? A. That's correct. Q. And is it fair to say that at the time [defendant] threw this bag [defendant] was already in custody? A. Yes." Redirect examination of Officer Hannagan elicited the following: "Q. Will you describe exactly your actions in relation to the defendant as you are coming upon him and the throwing of the bag, officer? A. As I grabbed [defendant]? Q. Where did you grab [defendant]? A. Around the waist underneath the arm. His arm was already past the front of his head. He had already thrown in. *[sic]* Q. Officer, was [defendant's] arm, with the bag in it, was his hand in the air before you grabbed his person? A. Before I actually—yes, because I would have grabbed his arm otherwise. Yes, his arm was already in the air before I actually made body contact. Q. Then you grabbed his waist? THE COURT: He might have released it before you even grabbed his waist, officer? THE WITNESS: That is true." Recross-examination: "Q. Isn't it a fact that you grabbed him

before you saw any bag? A. Grabbed him before I saw the bag? Q. Right A. I had seen the bag in the air. When I first seen the bag, it was flying out of his hand. So I guess I would have grabbed him then. I saw the bag in the air. Q. So, your memory seems not to be fine on this point. I believe what you're saying is when you first saw the bag you were already holding [defendant] in your custody? A. Right. The bag was in the air." It must be remembered that what we are concerned with here "is not the proof beyond a reasonable doubt required for the conviction of a crime but reasonable ground or probable cause for making a search, that is, observations or information sufficient to move a reasonable man to conclude that a crime is being committed or attempted" *(People v White,* 16 NY2d 270, 273). Reason and common sense are sure guides in properly resolving such issue. In this case there were two separately observed transactions, not remote in time from each other, which while not directly repetitive of one another were sufficiently similar for Officer Jirak to link the two transactions and fairly infer that defendant was dealing in drugs. That no tinfoil packet was actually seen being dropped in the first transaction, nor any money passed in the second transaction, does not render unreasonable the inference which was drawn. The observed actions were so comparable in each instance, that it was reasonable for the officer to assume that he merely failed to see that a tinfoil packet was being dropped in the first instance and merely failed to see the money being exchanged in the second instance. It was common sense for the officer to connect the two transactions and infer that defendant's *modus operandi* was to distribute tinfoil packets by dropping them and having them picked up by the purchaser. The actions of defendant were clandestine and furtive and did not involve a straight transfer of a tinfoil packet for cash which may be open to innocent interpretation. Defendant's covert and suspicious actions emanating from a desire to conceal the sale of drugs evince an illegal intention (see *People v White, supra).* The officer's observations were supplemented by his expertise in detecting illegal narcotic transactions; his cognizance that the area under surveillance was well-known for narcotics trafficking; and his knowledge that defendant's companion was a cocaine dealer. These factors lent additional support to the officer's conclusion that he was observing defendant engage in the illegal sale of tinfoil packaged drugs. In brief, the actions observed by Officer Jirak, coupled with his expertise and familiarity with the *modus operandi* of narcotics transactions, sufficiently established probable cause in the eyes of the officer (see *People v Valentine,* 17 NY2d 128). Defendant's subsequent attempt to rid himself of the manila envelope as the police approached reinforced the belief on the part of the police that defendant had committed a crime and was trying to discard the tangible evidence thereof. In so doing, defendant evinced a consciousness of guilt (see *People v Alexander,* 37 NY2d 202). The defendant's act of throwing away the envelope with its contents occurring prior or almost simultaneous with his being seized by the police is cognizable on this record. Contrary to the assertion by the majority, there was no unequivocal, unexplained declaration by any of the officers that defendant was arrested before he discarded the narcotics. At most, there was an attempt to seize and restrain defendant before he accomplished his goal of throwing the envelope. Clearly, on this record, the action by defendant to rid himself of the envelope was in progress before he was seized, and the seizure of defendant did not prevent or interrupt that action. Even assuming the incorrect observation by the majority that Officer Hannagan "stated explicitly on no less than three occasions in the course of his cross-examination, that the defendant was in custody before he saw the envelope"

to be correct, the critical issue is not whether this officer seized defendant before said officer saw the envelope, but whether the officer seized defendant before defendant threw the envelope. *People v Alexander (supra)*, therefore, remains viable in the context of this record. Further, speculation as to the mental processes of the Judge at the suppression hearing regarding findings not made cannot substitute for the functions of this appellate tribunal in reviewing questions of fact (see CPLR 5501, subd [c]). The judgment of the Supreme Court, New York County, rendered November 10, 1975, convicting defendant upon his plea of guilty, of attempted criminal possession of a controlled substance in the fifth degree, which followed a denial of a motion to suppress, should be affirmed.