■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL

JOHNS, Appellant.—Judgment, Supreme Court, New York County, rendered October 4, 1977, convicting defendant of criminal sale of a controlled substance in the third degree and sentencing him thereupon to four years to life, modified, as a matter of discretion in the interest of justice, to the extent of reducing the sentence to a term of two years to life, and, except, as thus modified, affirmed. Defendant was sentenced in accordance with the terms of a plea bargain on his plea to a class A-III felony. Prior to the entry of his plea and for the year that this prosecution was pending, the offer to defendant and his codefendant, Mendez, had always been four years to life. When defendant finally accepted the plea offer, Mendez' case was severed. Defendant's counsel was of the understanding that Mendez was not to be offered a plea of less than four years to life. Two days after defendant was sentenced, Mendez was allowed to plead guilty before another Judge during his trial. The People consented to the entry of Mendez' plea which, like defendant's, was in full satisfaction of an indictment charging, *inter alia,* criminal sale of a controlled substance in the first degree (Penal Law, § 220.40), a class A-1 felony. (CPL 220.10, subd [5], par [a].) The plea was to the same crime to which defendant pleaded, criminal sale of a controlled substance in the third degree (Penal Law, § 220.16). In accordance with the bargain agreed upon at the time of the plea, Mendez received a sentence of two years to life. He is presently on parole from that sentence. In the presentence probation reports, defendant was described as "a low level dealer, and a hustler, who acted as a connection." On the other hand, Mendez was described by the same law enforcement official as "a large scale dealer, who is capable of delivering as much as 20 kilos of cocaine." Their criminal backgrounds are not otherwise significantly dissimilar. While it is true that the sentence imposed was precisely what defendant bargained for, and there is no indication that the sentencing court herein was even aware of any understanding by defense counsel that there was to be parity of sentences, let alone in a position to know that a more favorable plea would eventually be offered to Mendez, we, in the exercise of our discretion, modify to the extent indicated, so that no greater sanction is imposed upon the less culpable miscreant. Concur—Kupferman, J. P., Sandler, Sullivan and Markewich, JJ.

Lupiano, J., dissents in a memorandum as follows: Defendant raises only the issue of excessiveness of sentence on appeal, based on the argument that coparticipant Mendez received a sentence of two years to life from another Judge, while the defendant received four years to life. The proposition that the District Attorney acted unfairly during the plea bargaining is not sustainable. Defendant Johns asserts that the District Attorney violated a condition of the plea bargain with him that Mendez would not be offered a lesser sentence than Johns. Any such promise should have been placed on the record in order for it to be properly reviewed on appeal. This is necessary to avoid undermining the integrity of plea negotiations. The majority in effect have permitted defendant to replead, albeit again a guilty plea, with a consequent reduction in sentence at the discretion of the majority. The Court of Appeals aptly stated in *People v Frederick* (45 NY2d 520, 525-526): "Absent a showing that defendant's plea was baseless, the Judge to whom the motion is addressed must be entitled to rely *on the record* to ascertain whether any promises, representations, implications and the like were made to the defendant. (See *People v Selikoff,* 35 NY2d 227, 241-244 [cert den 419 US 1122]; *People v Lazore,* 59 AD2d 635.) Judicial recognition of the laudable purposes served by plea negotiations is legion, and further documentation would be mere surplusage. [Citations.] The

dispositive factor in this case is the need for finality which must be accorded dispositions by guilty plea in order to secure these acknowledged benefits. Only *rigorous adherence* by the courts to a policy of affording guilty pleas a great measure of finality will immunize plea negotiations from indiscriminate potshots * * * Public policy mandates that any remnants of the clandestine atmosphere of the plea negotiating process be eliminated." (Emphasis supplied.) The majority realizing, as they must, that if defendant was induced to plead guilty by an unfulfilled promise, he is entitled to vacatur of the plea, correctly observe that "the sentence imposed [on defendant] was precisely what defendant bargained for". What is most disturbing about the majority's rationale is that in this case, especially, any bargains would seemingly have been mentioned since the People were represented by different District Attorneys at pleas and sentence. It is a well-recognized legal principle that it is the function of the court to render sentence, not the District Attorney. Such recognition extends to attorneys as officers of the court, whether they be cast in the role of defense counsel or prosecutor. It is also well recognized that a determination as to what constitutes an appropriate sentence is a matter resting within the sound discretion of the trial court, and the sentence imposed by that court should not be reduced on appeal unless there was a clear abuse of discretion (see *People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951; *People v Dittmar,* 41 AD2d 788; *People v Caputo,* 13 AD2d 861). There is not a scintilla of a showing on this record that the sentencing court abused its discretion. Indeed, the majority as much as concede this fact when they acknowledge that the sentence was the one bargained for and that the sentencing court was never made aware of an understanding, if such existed, between the prosecutor and defense counsel regarding disposition of coparticipant Mendez' case. The majority also recognize that there was no basis showing that the sentencing court was in a position to know or control the circumstances of a more favorable plea being eventually offered to Mendez. For the majority to substitute their discretion for that of the sentencing court, where it is clear and admitted that the sentencing court did not abuse its discretion, is itself an abuse of discretion in legal contemplation. In effect, the majority appear to have overruled the precedent set forth in *People v Junco (supra).* The justification for this drastic relief resides in statements gleaned from the presentence probation report in this case and the probation report in the severed case of *People v Mendez,* to the effect that defendant is "a low level dealer, and a hustler, who acted as a connection" and Mendez is "a large scale dealer." Sympathy is thereby apparently invoked for defendant, assuming he is a low level dealer, because his coparticipant, Mendez, assuming he is a higher level dealer, obtained a more liberal sentence from another Judge in his case. The fact that Mendez was more fortunate in sentencing *before another Judge* should not serve to redound to defendant's benefit on this record. If disparity of sentencing is the sole criterion, without due regard for relevant circumstances, controlling legal principles and public policy, then it may just as easily be concluded that this goal could be obtained by increasing Mendez's sentence from two years to life to four years to life, to accord with defendant's sentence herein. As that result—assuming it is laudable—cannot be obtained, the majority have opted for conveying the benefit of Mendez' lesser sentence on defendant, undeserved though it is, all in the name of avoidance of disparity of sentencing. Such a result may well open "Pandora's box" and serves, in my opinion, as bad precedent. Nothing has changed in the realities of sociology, science and the nature of man to render the wisdom of this court expressed

in 1974, in *People v Junco (supra),* less relevant today. We there stated, adopting the sentiments expressed by the trial court—" 'Nothing is more destructive to a community's well being than widespread drug abuse. More young people in our city die from drug abuse than from any other single cause. Hard drugs are indeed a cancer to our community. Society has mounted a massive effort to blot out this destructive evil' " *(People v Junco,* 43 AD2d 266, 268, *supra).* Indeed, even the dissent in *Junco,* concerned with the propriety of disparity of sentencing *by the same Judge* over defendants who were codefendants charged with and convicted of the same crime, is completely different from a situation where different Judges in different, or in the same jurisdiction, impose disparate sentences for the same crimes. The defendant here was charged with criminal sale of a controlled substance in the first degree (Penal Law, § 220.40), criminal possession of a controlled substance in the first degree (Penal Law, § 220.20), and third degree (Penal Law, § 220.10) arising out of events occurring on September 17, 1975. A second indictment charged the same narcotics offenses arising out of events occurring on September 12, 1975. Defendant's plea of guilty to criminal sale of a controlled substance in the third degree (Penal Law, § 220.16), a class A-III felony, covered *both* indictments. Defendant faced a possible sentence of from 15 to 25 years to life (Penal Law, § 70.00, subd 2, par [a]; subd 3, par [a], cl [i]) which he elected to avoid by plea bargaining. He should be bound by that bargain. The sentence of four years to life was appropriate and authorized. "In arriving at his bargaining position, a defendant may well calculate not only uncertainties in how a court may view the facts in his case but how it may view the applicability of law as well. On such matters, Judges themselves may often be expected to differ with one another, a factor to which the parties to plea bargaining need not be taken to be oblivious" *(People v Francis,* 38 NY2d 150, 155-156). Similarly, that different Judges may be expected to differ with one another on the length of a sentence to be given is a factor to which the parties to plea bargaining need not be taken to be oblivious. Accordingly, as I view the exercise of discretion by the majority in reducing sentence on this record to be an abuse as a matter of law, I would affirm the judgment of conviction. The record does not admit of extraordinary circumstances justifying modification of the judgment to reduce sentence.