■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BELINDA CUNNINGHAM, Appellant. THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DORIS CHAMBERS, Appellant.—Judgments of the Supreme Court, New York County, rendered September 29, 1975, convicting appellants upon their pleas of guilty, of criminal possession of a dangerous drug in the second degree (former Penal Law, § 220.22) and imposing upon each an indeterminate sentence of up to four years, affirmed. We do not dispute the facts as narrated in the dissenting opinion. Unlike our dissenting brother and contrary to the claim of appellants, we do, however, find the police had probable cause to enter the apartment. We therefore conclude that the evidence was lawfully seized. Probable cause exists, "if the facts and circumstances known to the * * * officer warrant a prudent man in believing that [an] offense has been committed" *(People v Oden,* 36 NY2d 382, 384, citing *Henry v United States,* 361 US 98, 102; *Brinegar v United States,* 338

US 160, 175-176). Detective Maste had probable cause to believe that the occupants of Apartment No. 5I had committed or were committing a crime, i.e., packaging large quantities of narcotics for street distribution. The police had proceeded to Apartment No. 5I in response to a radio dispatch that shots were fired there and that the caller who had reported the occurrence described the apartment as a known narcotics location. Moments after the police had announced their arrival at the door of the apartment, Detective Maste, from a vantage point on the roof (one story above the apartment), observed one of the occupants stick her head out of the window, look around and then place on the fire escape a large orange wastebasket (approximately 10 to 12 inches high), a box (approximately five inches square to approximately one foot high opened at the top), both filled with multicolored balloons, and a plastic bag filled with what Detective Maste believed to be either powder or sand. Based upon his experience as a police officer in the field of narcotics, Detective Maste knew the balloons were often used to package "narcotics [which had] to be cut down again for street sale." The logical conclusion he drew was that the occupants of the apartment were engaged in a large-scale, illegal narcotics operation. Detective Maste proceeded down the stairs inside the building from the roof to the fifth floor (where Apartment No. 5I was located) and together with some of his fellow officers, gained access to the apartment. Once inside, they seized the evidence. The predicate for the police conduct was not an observation such as the mere passing of an envelope (see *People v Oden, supra; People v Thomas,* 62 AD2d 945; see, also, *People v Corrado,* 22 NY2d 308) or of a tinfoil package (see *People v Elliott,* 62 AD2d 956) or of pieces of tinfoil from one person to another in return for pieces of green paper *(People v Maldonado,* 59 AD2d 692). Rather, the police action was grounded upon the totality of the facts and circumstances known to Detective Maste before he entered the apartment—factors which, based on his expertise, produced probable cause. It is not necessary to indulge in speculation, as does our dissenting brother, that "If safety had permitted, the officer could have approached the balloons and plastic bag to confirm his suspicion" and thus would have known with "certitude" whether the balloons were being used as party accessories or heroin receptacles. Police conduct should be viewed in a realistic, not antiseptic setting. A police officer on the fire escape, examining the wastebasket, box and plastic bags, would have been, literally, "under the gun", especially as it was known shots had been fired in the apartment. To expect the officer to stand in front of the window and clinically examine the contents of the wastebasket, box and plastic bag to verify that narcotics were contained therein, stretches credulity. The test for determining the existence of probable cause does not require "certitude" that a crime was, or was being, committed. The officers were justified in entering the apartment without a search warrant. The drugs seized herein can be readily classified as "potentially readily disposable contraband, even in the quantities * * * discovered in this case" *(People v Clements,* 37 NY2d 675, 679; see, also, *United States v Manning,* 448 F2d 992). Immediate action by the police was required. Insofar as the challenge of appellant Chambers to her sentence, we do not find that the sentence imposed was excessive or that the prosecutor interfered with the court's exercise of its sentencing discretion. Appellant Chambers was indicted for criminal possession of a dangerous drug in the first degree (former Penal Law, § 220.23), a class A felony. If she had been convicted of this charge, she could have been sentenced to a maximum of life imprisonment. She was arrested while employed as a packager in a major heroin distribution operation. She

admitted that this was not the first time she was working there. Accordingly, the imposition of an indeterminate sentence not to exceed four years' imprisonment upon her plea of guilty to the reduced count of criminal possession of a dangerous drug in the second degree cannot be deemed excessive. Although the court may have preferred to impose a sentence of probation, nevertheless, it is clear that the court accepted the sentencing recommendations made by the prosecutor in connection with the offer of appellant Chambers' plea to the reduced count. Finally, appellant Chambers provides no factual basis upon which to justify modification of the sentence already served (cf. *People v Johnson,* 67 AD2d 639; *People v Johns,* 69 AD2d 755).

*(People v Chambers)* Concur—Murphy, P. J., Birns, Fein, Markewich and Ross, JJ. [See 71 AD2d 559.]

*(People v Cunningham)* Concur—Birns, Markewich and Ross, JJ.

Murphy, P. J., and Fein, J., dissent in a memorandum by Murphy, P. J., as follows: Detective Edward Maste was the sole witness to testify at the suppression hearing. On the evening of July 30, 1973, Maste was on radio patrol duty with other officers. At about 10:15 P.M., the detective received a radio call that shots were fired at 164-72 West 141st Street, Apartment No. 5E, in Manhattan. Maste and his fellow officers responded to this first call but they did not find any indication that shots had been fired in apartment No. 5E or, for that matter, in the entire building. Maste received a second run at about 10:45 P.M. He asked for further information since the first call had proven unfounded. The radio dispatcher informed Maste that a female had called. The dispatcher also stated "that it was a known narcotics location to the caller of this job". He told Maste that the correct apartment was 5I rather than 5E. On this second radio run, the officers listened outside the door of Apartment No. 5I for approximately one minute before knocking. Voices and music were heard inside the apartment. Officer Costello then knocked on the front door. After a period of silence, a female voice asked who was there. The officers announced their identity. After another period of silence, the officers began to knock again. The same female voice told the officers that she had just taken or was about to take a shower. At about this same time, the officers heard scuffling within the apartment. At that point in time, Maste went to the roof to prevent any escape from the rear of the apartment. As Maste was about to descend the rear fire escape, the window of Apartment No. 5I opened. The detective stepped back into the shadows of the roof. He then observed a Black woman with red hair, later identified as Doris Chambers, place an orange wastebasket and a package on the fire escape; both the basket and the package were filled with multicolor balloons. Thereafter, the Black female placed on the fire escape a plastic bag filled with what appeared to be powder or sand. From his experience, Maste knew that balloons were often used to pack narcotics. While a sergeant watched the rear fire escape, Maste ran from the roof to the fifth floor apartment. As he arrived at the apartment, the door opened about three or four inches. A Black female, later identified as Yvonne Lee, stated that she was alone in the apartment. Since Maste had seen a different female in the rear of the apartment, he knew that Lee was lying. At that juncture, Maste directed his officers to push into the apartment. Lee was immediately placed under arrest. The officers then rushed to the back bedroom where they found defendant and several other individuals around two card tables. A subsequent search revealed that the basket and box on the fire escape contained 1,424 balloons filled with heroin. The plastic bag on the fire escape contained that same narcotic. The officers also found

small quantities of marihuana and cocaine inside the apartment. The defendant and her associates were placed under arrest by the police. A police officer is entitled to act on the strength of a radio bulletin. Where the bulletin, prima facie, furnishes probable cause to make an arrest and a search, the police officer may effect the arrest and the search. The sender's knowledge is, in effect, imputed to the receiver. However, on a subsequent motion to suppress, bare reliance on an unsubstantiated hearsay communication from a radio dispatcher will not suffice for probable cause *(People v Lypka,* 36 NY2d 210, 213, 214). At most, a radio call based upon an anonymous phone tip will generate a belief that criminal activity is afoot *(People v Stewart,* 41 NY2d 65, 69). Hence, on the first radio run, the police merely had reasonable suspicion to believe that an individual might be firing shots in Apartment No. 5E. The reliability of that anonymous phone tip was initially cast in doubt when the police found no evidence that shots had been fired in Apartment No. 5E. Of course, it is possible that the female tipster had given the correct apartment (5I) but that the radio dispatcher had erroneously broadcast an incorrect apartment (5E). For purposes of discussion, it will be assumed that the dispatcher inadvertently sent the officers to an incorrect apartment on the first run. It will also be assumed, although this fact is not evident from the record, that the tipster called a second time to inform the police of their initial mistake. The police, on the second run, should have become even more suspicious of the reliability of the anonymous complaint since the activity overheard in the apartment was quite normal. During one of her calls, the tipster apparently told the dispatcher that Apartment No. 5I was a known narcotics location. Since there was no reason to place any reliability in the tipster's primary complaint of shots being fired, the police had even less reason to place any credence in the tipster's secondary complaint concerning the narcotics activity in the apartment. Absent independent evidence of some drug trafficking, the police had, at the very most, a common-law right to make inquiry *(People v La Pene,* 40 NY2d 210, 223). This common-law right of the police to make inquiry was somewhat strengthened when they discovered the multicolor balloons on the rear fire escape. These balloons were often used in a packaging mill. Consequently, the police had a founded reason to suspect that criminal activity was afoot when Lee falsely stated that she was alone in the apartment. The police, however, do not have probable cause to make an arrest simply because they observe an individual carrying or transferring tinfoil packets *(People v Maldonado,* 59 AD2d 692); manila envelopes *(People v Corrado,* 22 NY2d 308); or bottles *(People v Amarosa,* 55 AD2d 621). Despite the fact that the foregoing receptacles are often used in the narcotics trade, the possibility remains that they could be used for many lawful purposes. Detective Maste had reason to suspect the actual contents of the balloons and the real motive of the occupants in placing those balloons on the fire escape. Nonetheless, the detective did not know with certitude whether the balloons were being used as party accessories or heroin receptacles. If safety had permitted, the officer could have approached the balloons and plastic bag to confirm his suspicion. If closer observation had revealed the powder to be heroin, then an intrusion into the apartment would have been warranted. Notwithstanding this speculation, the fact remained that the occupants of Apartment No. 5I had relinquished control over the balloons and the bag. The detective and the sergeant accompanying him could have remained on the roof and taken those measures as were necessary to prevent the destruction of the balloons and the plastic bag. In the interim, the other officers, at the apartment door,

could have made appropriate inquiry and, if necessary, sought a search warrant. Instead, Maste and his fellow officers pushed their way into the apartment without probable cause and arrested all the occupants. The evidence seized after this unlawful intrusion and arrest must be suppressed (cf. *People v Williams,* 20 NY2d 388). Accordingly, the judgment of the Supreme Court, New York County, convicting defendant, upon her plea of guilty of criminal possession of a dangerous drug in the second degree and sentencing her to an indeterminate term of incarceration not to exceed four years, should be reversed, on the law, the motion should be granted and the indictment dismissed as against defendant Cunningham.