Wachtler, J.
These appeals involve two distinct factual situations. Since these defendants challenge the sufficiency of affidavits submitted in support of applications for search warrants, the appeals will be considered together. Our focus rests essentially on the troublesome issue of whether information supplied by undisclosed informants, which is recited in the supporting affidavit, constitutes probable cause so as to justify the issuance of a search warrant.
In the first case the defendant Hanlon was indicted for criminal possession of marijuana (Penal Law, § 220.05), possession of a weapon as a misdemeanor (Penal Law, § 265.05, subd [2]), criminal possession of biphetamine capsules (Penal Law, § 220.05) and resisting arrest (Penal Law, § 195.05). The defendant moved to vacate the search warrant and to suppress the evidence seized pursuant to that warrant.
The facts and circumstances surrounding the issuance of the search warrant were developed at the suppression hearing and are uncontroverted. The sole witness called by the People was Detective Daniel Graniello, a member of the Narcotics Squad of the Suffolk County Police Department, who testified that on September 14, 1970 he applied to the District Court for a search warrant. The warrant application and supporting affidavit were based on the detective’s personal observations as well as the information garnered from an undisclosed informant to whom he had been introduced earlier that *554 month. The affidavit asserted that the confidential informant had supplied the affiant with grounds to believe that various crimes were being committed at the defendant’s premises.
Specifically, the informant had stated that there was a large quantity of marijuana in block form concealed in a kitchen closet and that a small caliber chrome-plated, pearl-handled derringer was hidden in a dresser drawer in the rear bedroom of the house. The affidavit further noted that this informant had supplied "information in the past that has led to the arrest of three persons whose cases are still pending” and that the informant had personally purchased drugs from the defendant. The officer’s personal observations consisted of surveillance of the target premises on several different nights from four to six hours during which known narcotics users, one of whom was named, were seen entering and leaving the premises.
At the conclusion of the detective’s testimony, defense counsel moved to have the warrant vacated on the grounds that the supporting affidavit was insufficient in that it failed to establish the reliability of the informant, and the timeliness and basis of the underlying information. These contentions were rejected by the County Court. The Appellate Term affirmed this judgment on different grounds.
The second appeal involves two defendants, one Rosen and one Fredericks, who were charged with possession of gambling records (Penal Law, § 225.15, subd 2), promoting gambling (Penal Law, § 225.05) and conspiracy (Penal Law, § 105.00). Both moved to vacate the search warrants and to suppress the evidence seized during their execution. As in the preceding case the facts and circumstances surrounding the issuance of the search warrants are uncontroverted, thus presenting our court with a question of law as to the sufficiency of the search warrant applications.
On November 8, 1971 Detective Dragonette, a member of the Gambling Unit of the Buffalo Police Department, applied to City Court for the issuance of search warrants for search of the person and automobiles of the defendant Fredericks and for search of the New Rosen Printing Corporation. The detective submitted one affidavit in support of all three warrants. This affidavit which noted that Detective Dragonette had over five years of police experience working exclusively on gambling, incorporated information regarding the manufacture and distribution of football pool tickets used for illegal gam *555 bling. The source of this information was a confidential informer and the affiant’s personal investigation.
The sequence of events leading to the application for the search warrants was related in the affidavit. On October 18, 1971 the confidential informant gave the police a complete description of the operation of the illegal football pool in Buffalo. The informer advised Detective Dragonette, who was in charge of the operation, where the tickets were printed, how many were printed and distributed each week, the times and dates of the pickups for distribution including specifics as to the system used for transporting and disseminating the tickets throughout the city.
Acting on this information the police gambling unit established a surveillance of Rosen’s print shop. During this stakeout, the operation of the football pool unfolded precisely as the source had indicated. At this time, the police observed and recognized the principal distributor as the defendant Fredericks who was known to them personally as a professional bookmaker. This information was also attested to by the informant who stated that Fredericks, a bookmaker who specialized in sporting events, was a prominent operator who was acting under the direct authority of one of four named "kingpins”. The police surveillance continued for three weeks and their observations confirmed in every detail the pattern of activity revealed by the confidential informer. The remainder of the affidavit outlined the informant’s past record of supplying accurate information including the dates and names of two specific individuals who had been arrested and convicted.
At the suppression hearing the defendants conceded the reliability of the informant but argued that the affidavit was insufficient in that it failed to set forth the source of the informant’s knowledge. The defendants’ motions were granted. The People appeal this disposition.
These appeals frame several key issues indigenous to the establishment of probable cause based on communications of an undisclosed informant. The Hanlon case challenges the timeliness of the information and the reliability of the informer. Both cases question the basis of the informant’s knowledge.
Since colonial times it has been the task of the courts to reconcile the dichotomy between efficient law enforcement and individual rights. Our courts have frequently grappled with these often antithetical interests in a myriad of situations. *556 One of the most troublesome has been the use of hearsay information to establish probable cause. Not until Jones v United States (362 US 257), did the Supreme Court approve this use of hearsay. However, hearsay information was only permitted where there was a "substantial basis for crediting” that evidence. It was not until subsequent cases that the precise import of these words was developed.
The test governing the use of hearsay was enunciated in Aguilar v Texas (378 US 108), where a two-pronged approach was established. The first prong, also known as the veracity test, concerns the trustworthiness of the person supplying the information and requires the affiant to set forth the reasons which led him to conclude that the informer was credible or that his information was reliable. The second, or basis of knowledge test, is directed toward the trustworthiness of the information and requires that the affiant delineate the facts and circumstances relied on by the informer in reaching his conclusions. By applying this test to the application before him, a Magistrate would be assured that the source was reliable, and could judge for himself the persuasiveness of the facts relied on thereby determining the probable accuracy of the information and of the soundness of the logical deductions drawn from that information.
The next important case in this area was Spinelli v United States (393 US 410), which explicated the Aguilar test. In Spinelli the warrant application. failed to satisfy the two-pronged analysis and was deemed insufficient. The court noted that the veracity test, either personal credibility or informational reliability, could be satisfied by independent investigation which tended to corroborate the hearsay report, but that the partial corroboration by the FBI in the case before it, could not support the inference that the informer was credible or had gathered his data in a reliable way.
Turning to the second test, the court held that the basis of knowledge may be established in the absence of a statement recounting the manner in which the information was gathered, by providing such a detailed description of the suspect’s criminal activity as to constitute self-verification. (See, also, United States v Ventresca, 380 US 102, 108-109.) Again, the court concluded that the test had not been satisfied by the relatively innocuous activity revealed by the informer. The significance of Spinelli lies in its application of the Aguilar formula and the supplementation of both prongs by suggesting *557 additional methods of satisfying them. Spinelli was followed by United States v Harris (403 US 573), which carried the development one step further.
The Supreme Court in Harris (supra), dealt solely with the first prong of the Aguilar test. In upholding the search warrant application the court rejected Harris’ contention that the informer’s veracity had not been established. The court held that while there had been no independent police investigation as suggested in Spinelli, the veracity test was satisfied where the informant spoke against his penal interest and the defendant was known to the police as a gambler. These factors established veracity in that the former imparted personal credibility while the latter was in the nature of corroborative verification.
Turning to New York law, we note a similarity of analysis. The veracity prong has been utilized in cases where the affidavit avers that the informant is credible because he had previously supplied accurate information (e.g., People v Montague, 19 NY2d 121; People v Rogers, 15 NY2d 422; or by an independent corroborative verification of the informer’s tale, e.g., People v Coffey, 12 NY2d 443, cert den 376 US 916; People v Malinsky, 15 NY2d 86; People v Marshall, 13 NY2d 28; People v Alaimo, 34 NY2d 187). The basis of knowledge prong has been implemented in cases where the affidavit failed to aver the underlying circumstances (e.g., People v Hendricks, 25 NY2d 129; People v Wheatman, 29 NY2d 337, cert den sub nom. Marcus v New York, 409 US 1027; and where the information was so detailed as to be self-verifying, e.g., People v Schnitzler, 18 NY2d 457). The key factor in these cases has been the presence of a substantial basis for crediting the hearsay statement.
Applying these principles to the present cases, we conclude that in both instances the supporting affidavits were sufficient to establish probable cause.
Defendant Hanlon’s objection as to the failure of the affiant to set forth the dates the informer gathered his information must be rejected. A commonsense reading of the affidavit reveals that the affiant was first introduced to the informer in early September. Since the affidavit was submitted on September 14, the information must have been received during the first two weeks in September. Moreover, the tone of the statement gives the impression that the illegal activity was continuing at the time the information was imparted. Conse *558 quently, this information could not be considered so stale as to vitiate its reliability.
Defendant Hanlon next contends that the affidavit failed to establish the reliability of the informer. We are unpersuaded by this argument in light of the informant’s statement that he had purchased narcotics from the defendant (United States v Harris, supra), the previous communication of accurate information (Aguilar v Texas, supra) and the corroborative verification by the police (Spinelli v United States, supra).
All three defendants contend that the affidavits failed to set forth the underlying basis of knowledge. We find no merit to these contentions. In Hanlon’s case, the detailed nature of the information, specifically as to quantity, shape, physical characteristics and location of the contraband could reasonably lead a Magistrate to conclude that it had been acquired through personal observation (Spinelli v United States, supra).
The defendants, Fredericks and Rosen, while conceding the reliability of the informant, challenge the basis of knowledge. We believe that the Magistrate had sufficient information before him to enable him to judge whether any essential conclusory statements were more than mere speculation or casual rumor. The pattern of activity related by the informant, even to the extent of relating the time, day, place and mechanics of the operation, was of such accuracy and detail as to lead to a reasonable belief that the conclusion was likewise accurate (People v Jordan, 28 NY2d 902). As the pattern unfolded the informer’s statements were reinforced by what the defendants did and the defendants’ activity was colored by what the informant said.
In upholding the validity of the affidavits supporting the search warrant applications, we take the. opportunity to reiterate our strong preference for search warrants. (People v Wheatman, 29 NY2d 337, cert den sub nom. Marcus v New York, 409 US 1027, supra.) The warrant requirement of the State and Federal Constitutions (NY Const., art I, § 12; US Const., 4th Amdt.) is designed to interpose the detached and independent judgment of a neutral Magistrate between the interested viewpoint of those engaged in ferreting out crime and potential encroachments on the sanctity and privacy of the individual (Johnson v United States, 333 US 10, 13-14). Where a search warrant has been secured, the bona ñdes of the police will be presumed and the subsequent search upheld in a marginal or doubtful case. (See, e.g., United States v *559 Ventresca, 380 US 102, 106-107, supra.) We realize that this places a great burden on the issuing Magistrate but that is as it should be.
The existence of probable cause is a determination solely for the Magistrate, not the affiant, and should only be made when probable cause has been demonstrated as a matter of fact in the manner prescribed by statute (CPL art 690) and decisional law (see, e.g., People v Marshall, 13 NY2d 28, supra; People v Brady, 16 NY2d 186). When considering whether probable cause exists no infallible formula is available; ideally we consider the probabilities as perceived by a reasonable, cautious and prudent police officer and evaluated by an independent Magistrate. However, in the real world, we are confronted with search warrant applications which are generally not composed by lawyers in the quiet of a law library but rather by law enforcement officers who are acting under stress and often within the context of a volatile situation. Consequently such search warrant applications should not be read in a hypertechnical manner as if they were entries in an essay contest. On the contrary, they must be considered in the clear light of everyday experience and accorded all reasonable inferences. (See, e.g., United States v Ventresca, supra; Brinegar v United States 338 US 160,175.)
Therefore when the Magistrate undertakes this factual determination, he should consider all aspects of the information supporting the application. Of particular relevancy in this process is an evaluation of the sources of information and the manner in which it was acquired. The Magistrate should also consider the experience and expertise of the officers involved and the extent to which the information has been verified. Further attention should be given to the nature of the crime and the exigencies, if any, involved. In sum, the Magistrate must evaluate the search warrant application consistent with these and other considerations which evince reliability.
Where it appears that the Magistrate has conducted such a measured and comprehensive examination into the basis for the warrant, the factual determination as to probable cause will, of itself, constitute a suitable makeweight when the warrant is challenged (People v Williams, 20 NY2d 388; Ker v California, 374 US 23). By the same token, where the Magistrate merely acts as a rubber stamp the validity of the warrant will be suspect.
Our strong, yet qualified, preference for warrants bespeaks *560 an aversion to the existence of unchecked and unlimited power in the hands of those employed to enforce laws. However, where a search warrant has been obtained the dangers of unbridled power are minimized.
In light of the foregoing considerations we conclude that the search warrants in the instant cases should be upheld. Accordingly, the judgment of conviction in Hanlon should be affirmed and the orders to suppress in Rosen and Fredericks should be reversed and defendants’ motions denied.
The defendant Hanlon’s conviction under a separate indictment should, similarly, be affirmed (People v Troiano, 35 NY2d 476).
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
In People v Hanlon: Order affirmed.
In People v Rosen and People v Fredericks: Orders reversed and defendants’ motions denied.