■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM HOLMES, Appellant.—Judgment entered in the Supreme Court, New York County on June 8, 1973, convicting the defendant upon his plea of guilty of attempted criminal possession of a dangerous drug (fourth degree) and sentencing him to one year in prison, affirmed. The police received a telephone call from a previously registered informer, known to them as No. 4868, who informed them that a male negro, 35–40 years old, wearing a certain set of clothing, was selling cocaine in front of the Admiral Bar on 131st Street in Manhattan. The informant stated that the cocaine was in a cloth pouch which was tied to the inside waistband of the man's pants. Two groups of officers repaired to the location indicated in two separate vehicles. Both groups spotted the defendant as the person described by their informant. After about 10 minutes of surveillance, the defendant was arrested and the cloth pouch containing 19 tinfoil packets of cocaine was found in his waistband just as No. 4868 had predicted. We uphold the validity of the defendant's warrantless search as an incident to a lawful arrest. The detailed information given by the informer provided the requisite probable cause for the defendant's arrest. The facts fulfill the two requirements developed under *Aguilar v Texas* (378 US 108), *Spinelli v United States* (393 US 410) and, most recently in New York, *People v Hanlon* (36 NY2d 549) i.e., the reliability of the informant and the trustworthiness of the information. The only witnesses called at the suppression hearing were the police officers who testified as above indicated. The issue was one of credibility. The trustworthiness of No. 4868 is established by his specific information. Aside from the accurate description of the defendant and his wearing apparel, he gave the unusual location of the drug. He did not merely say that Holmes was carrying drugs (cf. *Draper v United States,* 358 US 307). Rather, he described the particular drug, cocaine, and its exact location. These factors clearly indicate that the information was obtained in a reliable manner and probably by personal observation (cf. *People v Hanlon, supra).* Compare these facts with those in *Spinelli v United States (supra,* p 417), wherein the Supreme Court determined that the information that petitioner was a bookmaker "could easily have been obtained from an offhand remark heard at a neighborhood bar." And the police had evidence that No. 4868 was reliable, for two police officers testified that each had participated in an arrest for narcotics where information had been given by No. 4868. On a previous occasion the same informant had telephoned the

squad and described a man and a woman who were selling heroin at a given address. The informant stated that the heroin was in glassine envelopes hidden in the woman's bra. The police arrested the couple and found the heroin in the lady's bra. Another heroin arrest had resulted from No. 4868's information. The information received by the police was of such quality that they had probable cause to believe that the defendant was committing a crime and consequently, the motion to suppress the cocaine was properly denied. Concur—Lupiano, Lane and Nunez, JJ.; Murphy J. P., and Capozzoli, J., dissent in a memorandum by Capozzoli, J., as follows: The general rule is well established that proof of probable cause is a must for a lawful arrest without a warrant or for the issuance of a valid search warrant. While it is true that hearsay can be used in determining whether reasonable cause exists, nevertheless such hearsay must conform to certain principles laid down by the courts. The test which must be followed in the use of hearsay was enunciated in *Aguilar v Texas,* (378 US 108) and further examined in *Spinelli v United States* (393 US 410). A two-pronged approach was established. The first prong deals with the trustworthiness of the informant and requires the person to whom the information is conveyed to establish the reasons why he regards the informant as credible. The second prong is directed towards the trustworthiness of the information which is conveyed and requires that the person receiving the information delineate the facts and circumstances upon which the informant relies in reaching his conclusion. *(People v Hanlon,* 36 NY2d 549.) For the purposes of this memorandum we are willing to assume without conceding that the reliability of the alleged informant was established by the evidence. The question which is left open is whether sufficient has been shown to indicate how the informant acquired the information which he conveyed. The People rely primarily on the testimony of Police Officer Biesel for their contention that the second prong is satisfied by the evidence. An examination of that testimony discloses that Biesel did not speak to the informant directly, nor did he know who had received the informant's call and, in addition, he did not remember who passed the information on to him. He further testified that the information conveyed by the informant to an unidentified police officer, over the telephone, was in turn conveyed to him by oral statements and a written memorandum. The memorandum supposed to have been made concerning that call has been lost and could not be produced for the inspection of the court. Nor could the witness testify as to what description of the suspected drug seller was given by the informant and which was supposedly contained in the lost memorandum. Further, although Biesel testified that he arrested the defendant because his clothing matched that allegedly described by the informant, he could not remember any of the clothing worn by the defendant at the time of his arrest, or any part of the clothing described by the informant. In *People v Hanlon (supra,* p 556) of the opinion, the court said: "The test governing the use of hearsay was enunciated in *Aguilar v. Texas* (378 U.S. 108), where a two-pronged approach was established. The first prong, also known as the veracity test, concerns the trustworthiness of the person supplying the information * * * The second, or basis of knowledge test, is directed toward the trustworthiness of the information and requires that the affiant delineate the facts and circumstances relied on by the informer in reaching his conclusions. By applying this test to the application before him, a Magistrate would be assured that the source was reliable, and could judge for himself the persuasiveness of the facts relied on thereby determining the probable accuracy of the information and of the soundness of the logical deductions

drawn from that information." Later, in the same case (p 559), we find: "The existence of probable cause is a determination solely for the Magistrate, not the affiant, and should only be made when probable cause has been demonstrated as a matter of fact". Of course, the *Hanlon case* dealt with the sufficiency of the information upon which the search warrant was issued, but the rules are the same in determining whether an arrest and search, without a warrant, are based on probable cause. An examination of the record in this case discloses that there is no possible way to check upon the information passed on by the informer so as to secure a ruling from a detached, neutral Magistrate.as to whether same satisfies the rule. The only way to justify the ruling below, denying the motion to suppress, is by accepting the conclusions reported by the police witness, without an examination of the facts upon which they are based. His duty is not to report conclusions, but the facts which he has learned. It is the court, in the final analysis, which must decide whether the facts amount to probable cause, and not the police, and, in this case, there is a total failure of evidence on this issue. The reliance of the majority on the alleged detailed information is not warranted by the evidence, because one searches the record in vain to ascertain facts. There are none. The only information which was verified by the search was that the drug would be found in a cloth pouch of the man's pants. But a search which is illegal in the beginning does not become legal by the discovery of contraband. As was stated by the court in *People v Mitchell,* (30 AD2d 845, 847): "In the generally accepted use of the word in search and seizure cases, the informant is the one who was witness to a crime, one who was an accomplice to a crime or one who actually observed the fruits or instrumentalities of a crime in the possession of the accused." *Officer Biesel's testimony filled none of these categories.* As was said in the dissenting opinion in *People v Sutton* (38 AD2d 567) which was adopted by the Court of Appeals in (32 NY2d 923) at page 568 of the Appellate Division report: "there has been no proper showing of the reliability of the informant's information. The information has not been set forth in such precise nature and great detail as would satisfactorily furnish a basis for a belief in its credibility [citing cases]. Further, it is not clear that the informant was speaking from firsthand knowledge. It would be impermissible to presume that the informant had such knowledge in the absence of an allegation to that effect". While we acknowledge the fact that the reliability of the information of the informant can be verified in other ways, where the evidence allows this to be done, in the case at Bar there is no other way. In addition to the failure of the police to report the language used by the informant, which would shed light as to how he acquired his knowledge of the possession of the drugs, there is no evidence of any additional facts which might have been learned by the police in their observations of this defendant's behavior before the arrest was made. For the reasons above stated we dissent and vote to reverse the determination of the court below denying the motion to suppress and would grant same on the law and the facts.