THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v MICHAEL R. SCAVONE et al., Respondents.

Third Department, August 4, 1977

*Pierce H. Russell, District Attorney (Ira Mendleson, III,* of counsel), for appellant.

*E. Stewart Jones* for Michael R. Scavone, respondent.

*Kevin Engel* for Clare S. Nichols, respondent.

MAHONEY, J. Defendants moved to suppress amounts of heroin, methadone, marijuana, amphetamine and certain drug paraphernalia seized on April 27, 1975 at their house pursuant to a search warrant on the ground the supporting affidavit failed to establish probable cause. Defense motions pursuant to *People v Darden* (34 NY2d 177) and *People v Alfinito* (16 NY2d 181) were not passed upon below since even assuming the truthfulness of the affiant, the trial court found a lack of probable cause. Since the affidavit on its face more than supplied probable cause, we reverse the suppression order without prejudice to reassertion of the *Darden* and *Alfinito* motions.

The April 25, 1975 affidavit of State Police Investigator Elliot in support of the application for the warrant to search the house and automobiles of the defendants contain five* distinct elements which in some way indicate that defendants were keeping illicit drugs in or about their house. These elements are of two sorts: communications from confidential informants and observations by named police officers. The informant data can be summarized as follows:

Informant No. 1—"who had provided information which led to the arrest and conviction of two subjects for Murder, the arrest of one subject and the seizure of a quantity of controlled substances advised me approximately six months ago that a guy named MIKE, living on East Lane, Burden Lake * * * with his girlfriend, CLARE, was selling and packaging heroin at his residence on East Lane."

Informant No. 2—told me that "he overheard a conversation

---

* The affidavit also indicates that Scavone had been arrested three times for drug offenses. Although there is authority that such prior arrests may be relied on to some limited extent as a basis of probable cause (see *United States v Harris,* 403 US 573, 583 [reasoning concurred in by three members of the majority]; *People v Wirchansky,* 41 NY2d 130, 135), the authority may be illusory (see *People v Wirchansky, supra,* p 135 citing *Spinelli v United States,* 393 US, 410, 418-419). Since without the references to prior arrests the affidavit amply establishes probable cause, the prior arrests are not considered a factor herein.

between a subject known to him, who let him hear what was being said and CLARE NICHOLS. In the conversation, CLARE NICHOLS discusses a quantity of heroin which was stolen from her residence on Burden Lake. He also overheard MICHAEL SCAVONE discuss the loss of 2 grams worth $200.00 apiece."

Informant No. 3—told me that "MICHAEL SCAVONE and CLARE NICHOLS of East Lane, Burden Lake * * * have had quantities of heroin in their house and hide it in the vicinity of the house in a shed or car. Thus [sic] being done to prevent thefts of the heroin by burglars. Recently the house was broken into and a quantity of heroin and money were stolen." (The affidavit goes on to state that police records indicate a burglary complaint by Scavone on March 6, 1975, which complaint was withdrawn.)

Direct police observations provided the further elements.

Observation No. 1—"during the week of the 21st of April, till the 25th of April, under my direction, a confidential informant was observed, by me, entering the residence of MICHAEL SCAVONE and CLARE NICHOLS. A few minutes later the informant exited the house and was observed by me. We then met at a pre-arranged location and the informant gave me a piece of tinfoil with a brown powder in it." (The powder was found to be heroin.)

Observation No. 2—"on the 25th of April, Trooper J.W. WERTHMULLER observed clare nichols wearing a bathrob [sic], exit the house, walk to a shed, near the cinder block house, remove a cellophane package, white in color, from the shed and proceed directly to the house. On another occasion, Trooper WERTHMULLER observed MICHAEL SCAVONE leave the house, look around him carefully, then walk to the shed by the cinder block building. He then immediately returned to the building."

Confidential informants alone may establish probable cause only if the Magistrate is "informed of (1) some of the underlying circumstances from which the informant concluded that illegal activities were taking place, and (2) some of the underlying circumstances from which the officer concluded that the informant was credible or reliable" (People v Wirchansky, supra, p 131, citing Aguilar v Texas, 378 US 108, 114). Apart from the police observations, each of the three informants' statements fails the Aguilar standard. Except for informant No. 2 there is no indication in the affidavit of the basis of the informant's knowledge, and only as to informant No. 1, who

gave accurate information in the past (see *People v Brown,* 40 NY2d 183, 187), is there sufficient showing of general credibility.

Of course the informants' statements are not to be assessed in isolation, and the requirements of *Aguilar* can be satisfied by independent police observation *(People v Hanlon,* 36 NY2d 549, 557). But rather than attempt to mechanically disassemble each statement and search for corroboration among the police observations, we note that the hearsay statements clearly constitute at least some reason to believe there were illicit drugs on the defendants' premises and add crucial significance to the police observations.

On April 25, the day the warrant was issued and two days before the search, Trooper Werthmuller saw defendant Nichols, wearing a bathrobe, leave the house, go to a shed and return with a "cellophane package, white in color". Defense counsel argues that this conduct is as consistent with innocence as guilt, and, therefore, under *People v Wirchansky (supra)* it is insufficient to complement the inadequate hearsay information. Counsel fails to suggest what innocent activity Nichols' actions might be consistent with. In light of the statement by informant No. 3 that the shed was used as a vault to secure against reoccurrence of the March 6 burglary, by far the most reasonable inference is that the white substance was an illegal drug.

The other police observation is still stronger. A few days before issuance of the warrant the affiant, Trooper Elliot, watched as an informant entered the house. Elliot met the informant at a prearranged place and received from him a packet of heroin. The County Court disregarded this incident "because there is no averment that the informant obtained the heroin from the defendants and such a fact cannot be presumed." This is a hyper-technical reading of the warrant application.

"[T]he Fourth Amendment's commands * * * are practical and not abstract. * * * [A]ffidavits for search warrants * * * must be tested and interpreted * * * in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting

their evidence to a judicial officer before acting." *(United States v Ventresca,* 380 US 102, 108; cited with approval in *United States v Harris, supra,* p 577 and *People v Hanlon, supra,* p 559.) Here the affiant police officer watched an informant *under his direction* enter and leave a residence where a reliable informant (informant No. 1) had said drugs were being sold. The two met, and the officer was given heroin. It is clear the affiant meant to say that the informant said the heroin came from defendants' house. Any other reading of the affidavit presupposes duplicity on the part of the officer, which presupposition is unjustified. "Where a search warrant has been secured, the *bona fides* of the police will be presumed". *(People v Hanlon, supra,* p 558.) It is possible the informant had the heroin with him before entering the house, but such a possibility is reduced in view of the other evidence that the defendants were selling heroin.

It was not necessary for the warrant application to demonstrate defendants' guilt, but merely probable cause to believe there were illegal drugs on the premises *(United States v Ventresca, supra,* pp 107-108; CPL 690.10, 690.40, subd 2; see, Pitler, NY Crim Prac Under CPL 10.23 [statutory "reasonable cause" equivalent to constitutional "probable cause"]). The application, read as a whole, more than satisfies this standard.

With respect to defendants' further argument that the warrant was overbroad in that it authorized a search of defendants' automobiles, we assume, *arguendo,* that there was no probable cause to search the automobiles. Under *People v Hansen* (38 NY2d 17) authorization to search the premises may be upheld and is severable from any improper authorization to search the automobiles. No evidence was found in the vehicles, and, therefore, none need be suppressed.

The order should be reversed, on the law; the motions to suppress should be denied without prejudice to motions pursuant to *People v Darden* (34 NY2d 177, *supra)* and *People v Alfinito* (16 NY2d 181, *supra).*

KOREMAN, P. J., SWEENEY, LARKIN and MIKOLL, JJ., concur.

Order reversed, on the law; motions to suppress denied without prejudice to motions pursuant to *People v Darden* (34 NY2d 177) and *People v Alfinito* (16 NY2d 181).