■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH YEDVOBNIK, Appellant.—Judgment, Supreme Court, New York County, rendered June 13, 1977, affirmed. Our dissenting brethren would reverse, grant the motion to controvert the search warrant for what was patently a bookmaking shop and suppress the evidence of that crime seized therein, and accordingly dismiss the indictment. In so doing they assert a standard which seems to call for a detailed bill of particulars and proof beyond a reasonable doubt, going far beyond what is required by *Aguilar v Texas* (378 US 108). *Aguilar* calls for no more than would be required for the equivalent of a prima facie case, and that has been demonstrated here. At the outset, reliability of the informant was established to the affiant detective by his superior, the District Attorney. This was hearsay indeed, but from a patently reliable source, sufficing for the purpose. The further basis for the warrant lies in the statement from the reliable informant, which quotes the self-incriminating description by the defendant himself of his illegal activities. The warrant should stand, and so should the conviction. Concur—Kupferman, J. P., Fein and Markewich, JJ.; Birns and Sandler, JJ., dissent in a memorandum as follows: We would reverse, grant the motion to controvert the search warrant, suppress the evidence seized, and dismiss the indictment. In our view, probable cause for the issuance of the warrant was not demonstrated, as the information recited in the affidavits of the three police officers does not meet the two-pronged test of reliability of the informant and trustworthiness of the information he supplied *(Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410; *People v Hanlon,* 36 NY2d 549, 556). The only statements concerning reliability of the informant are contained in the affidavit of Sergeant McGee. The sergeant alleged therein as follows: The informant* proved extremely reliable in the past, had supplied him with information regarding the location of bookmaking "wirerooms" which the sergeant had independently verified, and had reported conversations of bookmakers with reference to corruption in the New York City Police Department that was shown to be accurate by corroborative evidence. The sergeant further alleged he was informed by Assistant District Attorney Goldstock that the informant for the past few years proved reliable by supplying the Assistant District Attorney with information regarding "wirerooms" which proved accurate by independent verification and execution of search warrants. The information recited in Sergeant McGee's affidavit is conclusory. There is no factual support at all for the conclusions stated. No details are provided of the information the informant supplied or of the conversations he reported, nor of the indepen-

---

* The informant's name was not included in Sergeant McGee's affidavit, although his name and identity were made known to the court at the time of the application for the warrant. It was not necessary to disclose the name or identity of the informant *(Aguilar v Texas, supra,* p 114).

dent verification or corroboration which could confirm their accuracy. The affidavit completely lacks any facts from which the issuing Justice, in his independent judgment, could have concluded that the informant was reliable. Accordingly, the first prong of the *Aguilar* test is not met *(Aguilar v Texas, supra)*. Nor do the affidavits, separately or together, meet the second prong of the *Aguilar* test *(Aguilar v Texas, supra; Spinelli v United States, supra; People v Hamlin, supra; People v Wirchansky,* 41 NY2d 130, 131). Sergeant McGee alleged in his affidavit that the informant, a bookmaker he met in the course of conducting a current investigation into organized gambling, had informed him defendant was conducting a bookmaking operation. The sergeant stated the informant said he learned of this from conversations with defendant himself and other bookmakers. He further stated the informant advised him the ordinary business hours for such operation are 11:30 A.M. to 2:00 P.M. and 5:30 P.M. to 8:00 P.M. Attached to the sergeant's affidavit was a report from the New York City Police Department reflecting that from 1941 to 1972, defendant was arrested at least 15 times for various violations of the gambling laws, some of which charges resulted in convictions of defendant. Detective Keaveney set forth in his affidavit that according to the records of the telephone company there was a telephone, No. 245-1288 listed to one B. Zimmerman, at Apartment 6N, 408 West 57th Street, New York City, and a telephone for defendant listed at 99-60 63rd Road, Rego Park, Queens. The detective further stated that he observed defendant enter or exit 408 West 57th Street as follows: December 12, 1974—7:45 P.M. exited; December 13, 1974—11:30 A.M. entered, 2:10 P.M. exited; December 16, 1974—2:15 P.M. exited, 8:08 P.M. the lights went out in Apartment 6N and at 8:10 P.M. defendant exited the premises; December 17, 1974—2:08 P.M. exited, 8:02 P.M. exited. The affidavit of Sergeant McGee does not contain factual details from which the issuing Justice could reasonably have concluded that the information supplied by the informant was trustworthy. It does not provide the dates or places of the conversations with defendant or the other bookmakers, or any information identifying these other bookmakers in some manner. Nor does it recite that the informant told the sergeant defendant's illegal activity was occurring at 408 West 57th Street, or Apartment 6N thereat (the location to which the warrant was directed). While the report of defendant's previous gambling and bookmaking activities could have been considered by the issuing Justice in determining whether there was probable cause to issue the warrant, such information was inconclusive. The "factual" information in the affidavits of Detective Keaveney and Officer Howell merely presents bare suspicion. While the officers' qualifications as experts in reference to detection of violations of the gambling laws appear to be without question, nevertheless their personal observations of defendant's conduct are consistent with innocence *(People v Wirchansky, supra)*. These observations, therefore, could not bolster the insufficient contents of Sergeant McGee's affidavit so as to sustain a finding of probable cause for the issuance of the warrant *(People v Wirchansky, supra,* pp 134, 135; see *People v West,* 44 NY2d 656; *People v Brandon,* 38 NY2d 814). We note that the warrant calls for the seizure of "written records of an unlawful gambling business, including records of bets and wagers on sports events, pay and collect slips, line sheets, as well as telephone and other bookmaking records and gambling paraphernalia may be found, magnetic tape recordings containing conversations made pursuant to an unlawful gambling business may be found." Although it may be assumed gamblers maintain certain records pertaining to such a business, the Judge issuing the warrant should have been apprised, at least, of the

factual basis for the statement in the warrant that tape recordings containing gambling conversations would be found at the location. We observe that no reference to such tape recordings is to be found in the affidavits. Therefore, on that ground, too, the validity of the warrant is questionable.