THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v STEVE J. ELWELL, Appellant.

Third Department, February 1, 1979

## APPEARANCES OF COUNSEL

*Thomas E. Reilly* for appellant.

*D. Bruce Crew, III, District Attorney,* for respondent.

## OPINION OF THE COURT

MAHONEY, P. J.

On February 18, 1977, Investigator Hancock received a telephone call at his residence at approximately 11:00 P.M. He recognized the caller as a confidential informant who had, in the past, provided him with information which he had personally verified as being reliable. The informant advised Investigator Hancock that one Steve Elwell and a female companion by the name of Joanne Smith would be operating a motor vehicle in the vicinity of Lincoln Street in the City of Elmira and would be leaving "at any time". He further advised Hancock that Elwell would be in possession of a .25 caliber pistol and that the motor vehicle was a red Tempest bearing New York registration 915 DWY and equipped with a CB antenna.

Investigator Hancock, together with New York State Police Investigator Freeman, drove to Lincoln Street, found the red Tempest, ran a license check which revealed the vehicle was registered to Joanne Smith and set up a surveillance. Shortly thereafter they observed the Tempest leave the driveway where it had been parked. It was being operated by a white female who proceeded to a grocery store and then returned to the Lincoln Street driveway. Sometime later the same female came out of a residence accompanied by a white male and they drove away in the Tempest with the male driving. Investigators Hancock and Freeman, assisted by a city policeman, stopped the vehicle, identified the female as Joanne Smith and the male as Steve Elwell, and Investigator Freeman looked under the driver's seat and observed a holster containing a .25 caliber Colt automatic. It was not in plain view.

After a suppression hearing, the court ruled that the weapon was admissible. Later, the defendant pleaded guilty. By this appeal he now seeks to invalidate his plea and conviction on the ground that the court erred in not excluding the gun on the basis of insufficient probable cause for the search.

██ The Court of Appeals in *People v West* (44 NY2d 656,

657) stated that "[t]o establish probable cause based on an informant's tip, whether for issuance of a search warrant or for a warrantless arrest and search conducted in exigent circumstances, it must be shown that the informant is credible or reliable, and also that he had a sufficient basis for concluding that the subject of the tip is engaged in illegal activities. (See *Aguilar v Texas,* 378 US 108, 114; *People v Wirchansky,* 41 NY2d 130, 131; *People v Hanlon,* 36 NY2d 549, 556; *People v Castro,* 29 NY2d 324, 326.)" The first prong of the two-prong requirement, reliability of the informant, was met in the present case. Investigator Hancock testified at the suppression hearing that his informant had previously supplied accurate information which had been verified (see *People v Hanlon, supra).* However, the present record is fatally deficient in satisfying the second prong, the so-called "basis of knowledge" test *(People v Hanlon, supra).* Investigator Hancock's testimony clearly reveals that the informant did not state how he came to acquire his information. This failure on the part of the informant to disclose the basis for his acquisition of the information is violative of the *Aguilar* test *(People v Wirchansky, supra),* and since we cannot presume from the informant's statement that his information was gleaned from personal observation, such failure is fatal. Next, the People's contention that the informant's tip was resuscitated through the independent observations of the police officers must be rejected (see *People v West, supra).* The only testimony given by Investigators Hancock and Freeman prior to the arrest and search was as to their independent observations of the location of the red Tempest, a woman driving the car away and returning, and the woman and the defendant driving away from Lincoln Street together. The identity of the man and woman was not ascertained until after the vehicle was stopped. Clearly, these observations are as consistent with innocent behavior as with criminal conduct and were valueless as corroborative of the informant's information that Elwell was illegally in possession of a weapon. Here, as in *People v West (supra),* there is no basis to credit the informant's tip either by the content of his telephonic conversation with Investigator Hancock or by the independent observation of the police. Thus, there was a lack of probable cause to arrest and search the defendant.

Lastly, we note that there is authority for remittal for further development of a suppression hearing record where

the court erroneously prevented counsel for defendant from inquiring as to the source of the informant's information *(People v Bieniek,* 60 AD2d 777, 778). However, in the present case no such judicial ruling impeded defendant's counsel. In fact, since the People failed on direct examination of Investigator Hancock to elicit the source of the informant's information, defense counsel might have withheld inquiry out of fear of supplying an essential element of the People's burden (for a full discussion of remittal because of erroneous rulings, see *People v Havelka,* 45 NY2d 636).

The judgment should be reversed, on the law and the facts; the order denying motion to suppress reversed, the motion granted and the indictment dismissed.

GREENBLOTT, J. (dissenting). At the suppression hearing held on June 16, 1977, Investigator Hancock testified that on the evening of February 18, 1977, he received at his residence a phone call at 11:00 P.M. from the informer who stated that Steven Elwell and Joanne Smith were in possession of a .25 automatic pistol. The informant told Hancock that the two were operating a red Pontiac Tempest with a CB antenna on the back with New York registration 915 DWY; that the car was in the vicinity of Lincoln Street; and that the couple would be leaving the area "almost any time". After receiving the phone call, Hancock phoned Investigator Freeman of the New York State Police, and together they drove to Lincoln Street where they found the red Tempest described by the informer. The car, which at that point in time was being operated by a white female, left Lincoln Street and went to a nearby Stop and Go Market. During their surveillance, the officers ran a check on the license plate of the car, which came back to a Joanne L. Smith. The car then went back to the Lincoln Street address, and shortly thereafter it again left that address, this time with a white male as the driver and the same female as the passenger. The police eventually stopped the car at 1:45 A.M., and it was ascertained that the driver was Steven Elwell and the passenger was Joanne Smith. Investigator Freeman testified that he advised defendant that he had received information from a confidential informant that defendant was in possession of a loaded firearm. He then searched defendant's person for the weapon, and then searched the car, under the driver's side of the front seat, where he found a loaded .25 caliber automatic pistol.

In *People v West* (44 NY2d 656, 657), the Court of Appeals

stated that "[t]o establish probable cause based on an informant's tip, whether for issuance of a search warrant or for a warrantless arrest and search conducted in exigent circumstances, it must be shown that the informant is credible or reliable, and also that he had a sufficient basis for concluding that the subject of the tip is engaged in illegal activities."

We agree with the majority that the reliability of the informant was established. However, we disagree with the majority's position that the failure of the informant to disclose the basis of his information is "fatally deficient".

In *Spinelli v United States* (393 US 410, 416), the Supreme Court held that the second prong of the *Aguilar* test may be established in the absence of a statement recounting the manner in which the information was gathered, by providing such a detailed description of the suspect's criminal activity as to constitute self-verification. Thus, the fact that the basis of the informer's knowledge is not disclosed is not fatal; the key factor is the presence of a "substantial basis" for crediting the hearsay statement *(People v Hanlon,* 36 NY2d 549, 557). In our view, the detailed information provided by the informer to the police in the case at bar provided the requisite substantial basis for supporting the informer's information.

In *People v Hanlon (supra,* p 557), the Court of Appeals stated that "where the information was so detailed as to be self-verifying" the basis of knowledge prong has been implemented despite the failure to disclose the underlying circumstances of the informer's information. Here, the detail of the informer's information was such that it can be safely said that his information was reliable, which thus satisfies the second prong of the test *(People v Wheatman,* 29 NY2d 337, 344-345; *People v Hendricks,* 25 NY2d 129, 134). The informer advised the police of the color of the car, its make and model, that it was equipped with a CB antenna and its registration number, its location, the names of its occupants and that they were in possession of an automatic pistol. This detail was amply sufficient so as to compel the conclusion that the informant gained his information in a "reliable manner" *(People v Wheatman, supra,* p 345). It not only established a "substantial basis" for crediting the information *(People v Hanlon, supra,* p 557), but also sets the information apart from the category of rumor *(People v Hendricks, supra,* p 134; see *Spinelli v United States, supra; People v Schnitzler,* 18 NY2d 457, 460). As then Chief Judge FULD stated in *People v Wheatman* (29 NY2d 337, 345-346, *supra),* quoting from *Spi-*

*nelli v United States* (393 US 410, 416, *supra),* the conclusion that a crime has been committed must rest on " 'something more substantial than a casual rumor circulating in the underworld * * * [or] * * * an offhand remark heard at a neighborhood bar.' " Furthermore, although the independent observations of the police were as consistent with innocent behavior as with the criminal activity, they nonetheless corroborated the information received *(People v Kinlock,* 55 AD2d 627, affd 43 NY2d 832), and supplied the police with an ample basis for crediting the information.

The detail of the information furnished to the police officer by the informer in this case is remarkably similar to the detail provided by the informer in the benchmark case of *Draper v United States* (358 US 307). In *Draper* the government's informer did not state the way in which he had obtained his information, but did report that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of the two specified mornings. He went on to describe with minute particularity the clothes that Draper would be wearing upon his arrival at the Denver station. We note that the United States Supreme Court in *Spinelli (supra)* approvingly referred to *Draper* as a proper case for testing the reliability of an informer's information where the basis of his knowledge has not been disclosed.

We further note the applicability of the case at bar under the principles established in *Carroll v United States* (267 US 132). The *Carroll* doctrine permits a warrantless search based upon probable cause and some exigency of likelihood that such evidence will disappear if an immediate search is not conducted. (See, also, *Chambers v Maroney,* 399 US 42.)

In conclusion, the information supplied the police was sufficient to establish probable cause to stop, search defendant's vehicle and seize the gun. We, therefore, dissent and vote to affirm.

SWEENEY and MIKOLL, JJ., concur with MAHONEY, P. J.; GREENBLOTT and HERLIHY, JJ., dissent and vote to affirm in an opinion by GREENBLOTT, J.

Judgment reversed, on the law and the facts; order denying motion to suppress reversed, motion granted, and indictment dismissed.