THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HAROLD HUGHES, Appellant.

Fourth Department, January 9, 1969.

236

*Lipsitz, Green, Fahringer, Roll, Schuller & James* (*Herald Price Fahringer* of counsel), for appellant.

*Michael F. Dillon, District Attorney* (*Herbert J. Herman* of counsel), for respondent.

BASTOW, P. J.    The defendant has been convicted upon his plea of guilty of possessing with intent to sell, obscene, lewd and lascivious books and photographs.   We are here concerned with the correctness of an intermediate order denying a motion to suppress certain evidence seized by the police pursuant to a search warrant.

In March, 1967 a member of the Buffalo Police Department swore to an affidavit in which it was stated that a proven reliable informant had conveyed to the officer information that defendant was engaged in producing and selling obscene photographs.   A further crucial allegation was that the informant had given to the officer eight photographs which, according to the officer, depicted two females in a nude state and each committing a described lewd act.

Upon this affidavit a warrant was signed by a Judge of Erie County Court authorizing the search of defendant's home and the seizure of any "obscene photographs, negatives, prints, equipments used to reproduce or produce any lewd or obscene materials, or any and all records or paraphanalia [*sic*] used to conduct this type of operation."   Acting thereunder the police searched the home and seized a quantity of photographs.

Following the return of the indictment and entry of a plea of not guilty defendant moved to suppress the seized evidence upon the ground, among others, that the warrant did not particularly describe any of the materials to be seized but left to the sole discretion of the executing officers to determine what photographs were obscene.

In denying the motion the Magistrate who issued the warrant revealed — apparently for the first time — that "Prior to [the search warrant's] issuance, there was made available to me for my inspection, photographs in the possession of the Buffalo Police Department which I determined to be obscene and *the type of which were directed to be seized pursuant to the warrant.* It was my determination therefore, and not that of the police officers, that these articles were obscene.   The police therefore,

having the benefit of a judicial determination on the question of obscenity *were then directed to seize articles of a similar nature.*'' (Emphasis supplied.)

*People* v. *Rothenberg* (20 N Y 2d 35) was decided between the dates of the issuance of the warrant herein and the denial of the motion to suppress. Therein a warrant containing broad general language — practically identical with that used in the warrant before us — was held to be fatally defective because it delegated to the police officer executing it the function of determining whether the material was obscene. The court wrote (pp. 38–39): '' This language does not save the warrant from the fate that befell the search warrant in *People* v. *Matherson* (16 N Y 2d 509) which purported to authorize a search for ' indecent books and material.' It is not in compliance with the requirement of the Fourth Amendment to the United States Constitution that the warrant shall ' particularly ' describe the ' persons or things to be seized.' The basic defect is that the language of the warrant delegates to the police officer executing it the function of determining whether the material is obscene. * * * It would simplify the administration of the law if that whole function could be delegated to the discretion of law enforcement officers in the locality involved, but if that were done there would be as many different standards of what constitutes obscenity as there are policemen. It is acknowledged to be difficult even for the Supreme Court to draw the line on whether a book or picture is obscene (*Jacobellis* v. *Ohio*, 378 U. S. 184, 187) but the power and duty of making that determination is conferred upon the courts rather than upon the police (*Marcus* v. *Search Warrant*, 367 U. S. 717, 722).''

Thus, conceding, as the parties to this appeal do, that the warrant on its face was defective, there remains the issue as to whether the defect was fatal or on the other hand that the warrant may be sustained in light of the proof of the *in camera* proceeding before the Magistrate and his asserted instructions (presumably oral) to the officers to seize photographs similar to those that had been exhibited to him.

At the outset it may be observed that it is unfortunate that the Judge did not follow one of two possible courses of action. First, he could have entered in his own minutes, or his clerk's minutes, or made a stenographic record (cf. *People* v. *Schmitzler*, 18 N Y 2d 457, 461) that he had examined certain photographs (marked as exhibits) and had issued oral instructions (as he now asserts he did) to seize only similar photographs. Second, and preferably, the warrant could have provided that seizure

was authorized only of pictures similar to those attached thereto which had been judicially found to be obscene.

The next disturbing feature of this case is the doubtful state of the proof as to whether or not the police obeyed the oral instructions of the Judge to seize only photographs similar to those that he had viewed. It is difficult to ascertain precisely what was seized because of the inadequate inventory made a part of the return (cf. Code Crim. Pro., § 805). Listed therein in summary fashion are the contents of seven boxes. Four of them the inventory states contained "Misc. obscene photos" and two boxes contained "Misc. photos." Upon this appeal appellant asserts some 8,000 photographs were seized, the majority of which were not obscene. The People offered no proof on the subject.

Lastly, eight photographs have been submitted to us. These apparently were the ones viewed by the Magistrate. Actually there are six pictures (two are duplicates). While each depicts two nude females none shows either female committing the lewd act described in the affidavit of the officer upon which the warrant was issued.

We conclude that the motion to suppress should have been granted. We recognize that at the time of the issuance of the warrant the Judge did not have the benefit of the subsequent holding in *People* v. *Rothenberg* (*supra*). There the court stated that the warrant must "particularly" describe the property to be seized. There may arise factual situations where such particularization is not in the warrant but it is possible from all the proof to conclude that the issuing Magistrate made a judicial determination of obscenity before signing the warrant. Such is not this case. Furthermore, if oral instructions were issued by the Judge to the police to seize only photographs similar to those exhibited to him the proof fails to establish that the instructions were followed. Indeed, the evidence appears to be to the contrary.

The order entered November 30, 1967 denying the motion to suppress should be reversed and the motion granted. The judgment of conviction should be reversed on the law and facts and a new trial granted.

Del Vecchio, Marsh, Witmer and Henry, JJ., concur.

Order entered November 30, 1967, denying motion to suppress, reversed and motion granted; judgment unanimously reversed on the law and facts and a new trial granted.