OPINION OF THE COURT
Simons, J.
This appeal concerns the very basic issue of what information must be contained in an affidavit supporting a search warrant to authorize the seizure of materials which presumptively are entitled to the constitutional protection of the 1st Amendment. It arises from proceedings instituted in the Village of Depew Justice Court charging defendants with six counts of obscenity in the third degree based upon their possession of allegedly obscene video cassette movies in violation of Penal Law § 235.05 (1). That statute provides:
“A person is guilty of obscenity in the third degree when, knowing its content and character, he:
“1. Promotes, or possesses with intent to promote, any obscene material”.
After arraignment, defendants moved to suppress the seized films contending that the warrant authorizing their seizure was not based upon probable cause. Justice Court granted defendants’ motion and dismissed the informations and County Court affirmed its order. The People appeal by leave of a Judge of this court. They contend that the Justice Court, a local criminal court, was without jurisdiction to invalidate a search warrant issued by Supreme Court, a superior court (CPL 10.10 [2], [3]), and that even if it did have the power to review the Supreme Court warrant it erred in finding that the Supreme Court Justice authorized the warrant without probable cause.
Insofar as the jurisdictional question is concerned, the motion was properly entertained by Justice Court. The Constitution provides that local courts “shall have the jurisdiction prescribed by the legislature” (NY Const, art VI, § 17 [a]) and the Legislature has provided that when an information is pending in a local criminal court, as these informations were, a *569 motion to suppress “must be made in such court” (CPL 710.50 [1] [c]). Moreover, Justice Court had such jurisdiction even though the warrant was issued by a Supreme Court Justice. CPL 690.05 provides that warrants shall be issued by local criminal courts but the Supreme Court Justice was authorized to issue this warrant because at the time he did so he was exercising preliminary — not trial —jurisdiction of the local criminal court, as the Criminal Procedure Law permits him to do (see, CPL 10.10 [3] [f]). Thus, Justice Court acted properly when it reviewed his probable cause determination (see, People v Guerra, 65 NY2d 60). Whether it is wise for a Village Justice, who may or may not be a lawyer, to review a Supreme Court Justice’s warrant authorizations is a matter for the Legislature.
Turning to the merits of defendants’ motion, analysis starts with recognition of the constitutional requirement that no warrant shall issue except upon probable cause (NY Const, art I, § 12; US Const 4th Amend). This requirement was designed to insure that the determination of probable cause (or to use the statutory term, reasonable cause [see, CPL 690.10]), to believe that the property is subject to seizure must be made by a neutral magistrate interposed between police officers and the citizenry and exercising a “ ‘detached and independent judgment’ ” (People v Potwora, 48 NY2d 91, 94; People v Hanlon, 36 NY2d 549, 558; Marcus v Search Warrant, 367 US 717). Before finding probable cause, the magistrate must have before him “the full facts from which inferences might be drawn, and information necessary to determine their reliability” and he must undertake a searching inquiry of them. It is a duty which he may not delegate, in part or in whole, regardless of the qualifications of the person on whom reliance is placed (People v Potwora, supra, at pp 94-95; Lee Art Theater v Virginia, 392 US 636; see also, Monserrate v Upper Ct. St. Book Store, 49 NY2d 306; People v Abronovitz, 31 NY2d 160, 164-165; People v Rothenberg, 20 NY2d 35, 38; People v Hughes, 31 AD2d 235). Moreover, in making that searching inquiry the magistrate is obliged to recognize that 1st Amendment items are presumptively protected by constitutional guarantees of free speech (see, Roaden v Kentucky, 413 US 496). Because their seizure based upon the ideas they contain may constitute a prior restraint, there is a higher standard for evaluation of a warrant application seeking to seize such things as books and films, as distinguished from one seeking to seize weapons or drugs, for example (Roaden v Kentucky, supra, at p 504; Marcus v Search Warrant, 367 US 717, 730-731, supra). In applying the 4th Amendment to such *570 items, the court must act with “scrupulous exactitude” (Stanford v Texas, 379 US 476, 481-485; see also, Maryland v Macon, 472 US _, 125 S Ct 2778, 2780-2782).[1]
Consistent with these rules, the task of the issuing magistrate in this case was not to decide guilt or innocence but to determine in a preliminary way from the information submitted and available to him whether there was probable cause to believe that the material to be seized was obscene within the tripartite definition of the statute[2] (see, People v Potwora, 48 NY2d 91, supra; People v Abronovitz, 31 NY2d 160, supra; People v Rothenberg, 20 NY2d 35, supra). Because the record does not indicate whether the magistrate viewed the films or questioned the investigators, we must judge his warrant authorization solely on the allegations contained in the papers submitted to him.
The applications consisted of an affidavit of the Sheriff’s deputy who rented the 10 cassettes from defendants’ store and separate affidavits relating to each film executed by an investigator from the District Attorney’s office who had viewed the films after the deputy delivered them to him for that purpose. In each affidavit the investigator identified the film by title, indicated the time required to view it, 80-90 minutes generally, and described the sexual activity shown in some of the scenes. Each affidavit contained approximately 15-20 typewritten lines describing the film, the descriptions in the two shortest affidavits containing only 11 lines and in the longest one, 27 lines.
Each affidavit recites that the subject film depicts one or more acts enumerated under section 235.00 (1) (b). Many of the scenes *571 described contain explicit sexual activity, patently offensive by any constitutional standard, but the allegations of the affidavits do not indicate whether they constitute all, most or a few of the scenes presented in the films. Thus, some of the affidavits describe only two or three scenes in the movie and others refer to “one scene”, “a scene”, “another scene”, or “a later scene” without any attempt to describe the film as a whole, the continuity of the action or the pervasiveness of the sexual conduct. The descriptions of the action are not supplemented by references to the narrative or dialogue of the films and the affiant attempted to describe the “character” or “theme” of the movies by settings having nothing to do with plot, phrases such as “a middle class white neighborhood”, “the home of one of the six girls” or “a high school for girls.” He made no attempt to reveal the story line (or lack of one) of the films or demonstrate that their “predominant appeal” was to prurient interest. In short, none of the affidavits permit an inference that the scenes described are more than a catalog of offensive parts of the whole. Undoubtedly, similar lists could readily be compiled by excerpting descriptions of scenes from books and movies having recognized merit. Stanley Kubrick’s “Clockwork Orange” and Federico Fellini’s “Satyricon” come quickly to mind.
The dissent contends that this deficiency is cured because the affidavits allege that certain acts occurred “throughout” the movies (dissenting opn, at pp 580-581). Significantly, the word “throughout” appears in only two of the affidavits. But further than that the statements relied upon are conclusory and patently ambiguous. They may be interpreted as alleging that sexually explicit acts are pervasive in the two films described but they may also be interpreted in other, less inculpatory ways. That being so, the magistrate was required to inquire and clarify the affidavits’ meaning and the record does not establish that he did so.
We have previously held that the courts should not analyze applications in a grudging or hypertechnical manner when determining whether they meet constitutional standards (see, People v Hanlon, 36 NY2d 549, 559, supra, and cases cited therein). We do not suggest otherwise now. Certainly a screenplay need not be annexed to a warrant application nor need the issuing magistrate view the film or even a part of it before approving a warrant. There must be enough information before him in one form or another, however, to enable him to judge the obscenity of the film, not of isolated scenes from it. The affidavits, if that is all that is relied upon, need not describe the full *572 content of the movie but they must contain enough information to permit the issuing magistrate, applying contemporary community standards, to judge the films as a whole and determine that they are within the statutory definitions of obscenity and thus are not entitled to constitutional protection.[3] Probable cause cannot be inferred from the title of an hour and a half long film or from the description of a few scenes from it, even when the scenes described portray conduct enumerated in subdivision 1 (b) of the statute. Indeed, it is precisely the type of personal view of the “clear and present danger” posed by obscenity, such as that expressed on page 578 of the dissent, which makes it mandatory that the court insist on the sufficiency of the material before the magistrate and that he take a “hard look” at it, exercising care to adhere to the proper legal standards so that his subjective views or those of the police do not infringe upon the constitutional rights of citizens. It is the failure of the affidavits in this case to contain sufficient information to permit this which distinguishes it from decisions cited by the People, cases such as United States v Espinoza (641 F2d 153, cert denied 454 US 841), in which the supporting affidavits purported to describe every picture in the books to be seized, United States v Sherpix, Inc. (512 F2d 1361), in which the affidavit described in explicit detail every scene in the film {id., at pp 1368-1369), United States v Middleton (599 F2d 1349), in which there was a lengthy affidavit describing the conduct in the film in specific detail {id., at pp 1351-1354), and United States v Marks (520 F2d 913, revd on other grounds 430 US 188), in which the affiants were also examined by the court {id., at p 917).[4]
*573 Accordingly, the order of County Court should be affirmed.

. The majority have not adopted defendants’ contentions and therefore the extensive discussion of them in the dissent is irrelevant (see, dissenting opn, at pp 575-576). Similarly unnecessary is the inclusion of the full text of the supporting affidavits in the dissent’s appendix. The majority do not dispute that the affidavits describe patently offensive sexual acts defined by Penal Law § 235.00 (1) (b). Our disagreement with the dissent concerns only the question of whether the affidavits are sufficient to meet the additional requirements of paragraphs (a) and (c) of the statute and thereby support a finding of probable cause that the statute has been violated.

. Penal Law § 235.00 defines “Obscene” as follows: “Any material or performance is ‘obscene’ if (a) the average person, applying contemporary community standards, would find that considered as a whole, its predominant appeal is to the prurient interest in sex, and (b) it depicts or describes in a patently offensive manner, actual or simulated: sexual intercourse, sodomy, sexual bestiality, masturbation, sadism, masochism, excretion or lewd exhibition of the genitals, and (c) considered as a whole, it lacks serious literary, artistic, political, and scientific value. Predominant appeal shall be judged with reference to ordinary adults unless it appears from the character of the material or the circumstances of its dissemination to be designed for children or other specially susceptible audience” (see also, Miller v California, 413 US 15, reh denied 414 US 881).

. The dissent contends that this standard has been “rejected unanimously by the Federal courts and by an overwhelming number of sister state courts that have considered it.” (Dissenting opn, at p 573.) It fails, however, to cite any authority to support this sweeping generalization.

. The dissent relies on Sequoia Books v McDonald (725 F2d 1091) and United States v Pryba (502 F2d 391). Sequoia Books involved an action brought by a store owner against a Sheriff pursuant to 42 USC § 1983 because of the seizure of allegedly obscene magazines. The opinion gives few particulars of the warrant application, reciting only that part quoted by the dissent (see, dissenting opn, at p 582) which it described as the “least unprintable of the descriptions” (725 F2d 1091, 1093). The 1971 Pryba case involved a prosecution for shipments of obscene materials in interstate commerce under the broadly worded definition of obscenity contained in that statute. The court found probable cause for the seizure in an affidavit based upon hearsay which “in good taste briefly” alleged only that the film depicted “a man and a female engaged in sexual intercourse, and various other sexual activities by males and males and males and females” (United States v Pryba, 502 F2d 391,404, n 89, supra). While delicacy and brevity have a place in the world, one would not consider them important or even desirable considerations on a warrant application. While we accord the Federal courts the greatest respect, we are not *573 bound by their decisions and insofar as Pryba may be interpreted as contrary to our decision, we do not follow it.